**Eddie CLUCK, Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY, Respondent.**

**No. SC 91617.**

Supreme Court of Missouri,
En Banc.

May 1, 2012.

Rehearing Denied July 3, 2012.

Stephen H. Ringkamp, Hulverson Law Firm, St. Louis, Charles W. Armbruster III, Michael T. Blotevogel, Roy C. Dripps, Armbruster, Dripps, Winterscheidt & Blotevogel LLC, Alton, IL, Jose Bautista, Bautista Allen, Kansas City, for Cluck.

Craig M. Leff, James M. Yeretsky, Gregory F. Maher, Christopher Confer,

Spencer Throssell, Yeretsky & Maher LLC, Kansas City, for Union Pacific.

Steven L. Groves, Holland, Groves, Schneller & Stolze LLC, Stephen H. Ringkamp, Hulverson Law Firm, St. Louis, for Missouri Association of Trial Attorneys, which submitted a brief as a friend of the Court.

MARY R. RUSSELL, Judge.

The issues presented in this case arise from a vicarious liability claim under the Federal Employer's Liability Act (FELA), 45 U.S.C. section 51, against a railroad for the injury of an employee caused by a co-employee. A railroad employee was injured when his co-employee's personal pistol accidentally discharged. The pistol was packed in the co-employee's luggage and discharged while the employee unloaded the luggage from a railroad crew van. It is undisputed that the incident occurred while the men were within their hours of employment, but each of the employee's proposed jury instructions failed to submit the issue of whether the co-employee was carrying the pistol in furtherance of the interests of the employer.

This Court finds that because the employee's proposed instructions did not instruct the jury to find whether the injury-causing conduct of the co-employee—the carrying of the pistol in his luggage—was done in furtherance of the interests of the employer's business, the employee failed to present a submissible case of imputed liability under FELA. While the employee had a right to submit on his theory of the case, the trial court did not err in refusing his incorrect proposed verdict directors where the employee repeatedly failed to prepare a verdict director that correctly submitted the *respondeat superior* issue. Further, the trial court did not err in failing to create its own verdict director

properly submitting *respondeat superior* in place of the employee's erroneous proposed instructions. The judgment of the trial court is affirmed.

## I. Facts

Eddie Cluck ("Plaintiff"), Larry Clark, and other members of their train crew, all Union Pacific employees, were transported by the railroad in a crew van to Coffeyville, Kansas, where they were to spend the night at a hotel in order to board and crew a train next day. Before the trip, Clark packed a loaded pistol with the safety disengaged in his luggage because he planned to sell it to a friend before the Coffeyville trip. Clark explained that because he did not sell the pistol, he still had it in his luggage in Coffeyville. No one but Clark was aware that he was carrying a pistol in his luggage.

When the Union Pacific employees arrived in Coffeyville, Plaintiff helped unload the crew's luggage, including Clark's luggage containing the pistol. While Plaintiff was carrying the bag, the pistol accidentally discharged, and the bullet struck Plaintiff's right knee.

Plaintiff filed a Petition for damages against Union Pacific, alleging that Union Pacific was liable for his injuries under FELA. At the close of evidence at trial, Plaintiff and Union Pacific both filed motions for directed verdict. The trial court denied the motions.

During the jury instruction conference, Plaintiff sought to submit a verdict-directing instruction under the imputed liability theory of MAI 24.01(A). After allowing Plaintiff numerous opportunities to propose a correct verdict director, the trial court refused each of Plaintiff's various proposed verdict directors because the

trial judge believed each one misstated the law in that it improperly addressed or wholly ignored—depending on the instruction—the element of *respondeat superior*.[1] Plaintiff's failure to submit an instruction that accurately instructed the jury as to the law regarding *respondeat superior* liability after six attempts resulted in the trial court's refusal to submit Plaintiff's theory of imputed liability to the jury. The trial court, however, submitted Plaintiff's alternatively pleaded theory of Union Pacific's direct liability to the jury under MAI 24.01(B), despite objections from both parties.[2] The jury entered a verdict in favor of Union Pacific. Plaintiff appeals,[3] alleging that the trial court erred in refusing to submit his proposed verdict directing instructions—7D, 7J, 7E, or 7H—to the jury.[4]

---

[1]. Plaintiff appeals the trial court's refusal of four of his proposed verdict directors.

[2]. Plaintiff objected because direct liability was not his preferred theory of the case. Despite both parties' objections, neither party appeals this ruling.

[3]. This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

[4]. Plaintiff also contends that the trial court erred in refusing his request to submit a withdrawal instruction on the issue of prior disability payments. He failed to preserve this point on appeal because he failed to comply with rule 84.04(e) in that he did not set forth the requested instruction in his brief or appendix.

Additionally, Plaintiff argues that the trial court erred in excluding deposition testimony of a Union Pacific manager regarding employee discipline for bringing weapons to work. Appellate review of error alleged in the exclusion of evidence is limited to an abuse of discretion standard. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011). Absent clear abuse of discretion, the trial court's action will not be grounds for reversal. *Id.* Plaintiff's arguments that the trial court abused its discretion in excluding this deposition testimony are not persuasive.

## II. Analysis

### A. *FELA and* Respondeat Superior

At the heart of this case is the interrelation of the doctrine of *respondeat superior* and FELA. Plaintiff contends that *respondeat superior* is not applicable in FELA actions. He contends that his only obligation is to prove that he and Clark were acting on behalf of their employer at the time the pistol discharged, while the railroad argues that Plaintiff also must show that the negligent conduct that caused Plaintiff's injuries was in furtherance of the employer's interests and, therefore, within the course and scope of Clark's employment.

To analyze the parties' arguments, this Court first must determine what role *respondeat superior* plays in FELA cases.

---

Finally, Plaintiff argues the trial court erred in overruling his motion for directed verdict on liability. Parties bearing the burden of proof generally are not entitled to a directed verdict. *All Am. Painting, LLC v. Fin. Solutions & Assocs., Inc.*, 315 S.W.3d 719, 723 (Mo. banc 2010). However, the plaintiff is entitled to a directed verdict in the unusual situation where the defendant has admitted in its pleadings, by counsel, or through the defendant's individual testimony the basic facts of the plaintiff's case. *Id.* In such instances, the plaintiff is entitled to a directed verdict because there is no question of fact remaining for the jury to decide. *Id.* Plaintiff argues that Clark violated a work rule in failing to warn Plaintiff of the pistol in his bag and that Union Pacific is thereby vicariously liable as a matter of law. Plaintiff cites *Burrus v. Norfolk and Western Railway Co.*, 977 S.W.2d 39, 43 (Mo.App.1998), for the proposition that the violation of a work rule is evidence of negligence. However, *Burrus* does not stand for the proposition that any violation of a work rule is negligence as a matter of law. Plaintiff has not shown that Union Pacific is vicariously liable as a matter of law. The trial court did not err in overruling Plaintiff's motion for directed verdict.

Plaintiff argues that FELA relaxes the traditional *respondeat superior* "course and scope of employment" standard in favor of a more liberal standard of vicarious liability. Essentially, Plaintiff argues that FELA imposes co-employee vicarious liability if an employee's injury merely occurs while both are within the temporal bounds of their employment. He argues that because it is conceded that both Plaintiff and Clark were acting as employees of the railroad when traveling to and entering the hotel in Coffeyville in preparation for boarding the train the next day, the employer is liable for any injury that Clark caused Plaintiff without the need to prove that the Clark was acting in furtherance of Union Pacific's business in causing Plaintiff's injury.

 Traditional *respondeat superior* principles, however, require that the injury-causing conduct of an employee be within the course and scope of employment before the employer can be held vicariously liable. *Stanley v. City of Independence*, 995 S.W.2d 485, 487 (Mo. banc 1999). The course and scope of employment is not, as Plaintiff suggests, a measure of whether the injury-causing conduct of the employee occurred during work hours or work duties. It is well-settled that the course and scope of employment test is, instead, a test of whether the conduct of that employee was performed in furtherance of the employer's business. "Whether an act was committed within the scope and course of employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or interest of the employer." *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 (Mo.App.2008) (emphasis removed); *see also Southers v. City of Farmington*, 263 S.W.3d 603, 619 n. 22 (Mo. banc 2008); *Ewing–Cage v. Quality*

*Prods., Inc.*, 18 S.W.3d 147, 150 (Mo.App. 2000).

In its assessment of the role of *respondeat superior* in FELA cases, *Lavender v. Illinois Central Railroad Co.*, 358 Mo. 1160, 219 S.W.2d 353 (1949), is directly on point. In *Lavender*, a railroad dining car employee negligently discharged a firearm, killing another dining car employee. *Id.* at 355. The estate of the decedent brought an action against the employer-railroad under FELA. *Id.* at 354. In analyzing the decedent's claim, this Court reasoned that, under FELA, for an employer to be liable to an employee for a co-employee's conduct, it is not enough that the injury occur during the hours of both employees' employment. *Id.* at 357. Rather, the co-employee's actions must have been within the scope of the employment, *in furtherance of the employer's business.* As *Lavender* stated the issue:

> If the shooting was not in the course of the discharge of [the injury-causing employees'] duties and had no tendency to further the work of defendant's business the case is much simplified. Under the Federal Act and the Missouri law unless the shooting can be said to be within the scope of the employment and in furtherance of the railroad's business, the railroad is not liable.

*Id.* at 357. In *Lavender*, the gun was not carried for any purpose of the railroad and it discharged while the employees were playing around with it. *Id.* at 358. This Court explained that the acts causing the negligent discharge of the gun, therefore, were outside the course and scope of the co-employee's employment because they were not done in furtherance of the employer's business; so, the railroad was not liable for the acts under FELA. *Id.* at 358–59.

 Plaintiff argues that this application of *respondeat superior* principles is

unfair, for an employer will seldom have ordered the employee to perform the negligent act, and, therefore, the negligent act will almost never be found to be in furtherance of the employer's interests. This argument misconstrues the standard. As *Lavender* explained:

> In order for the master to be liable, it is, of course, not necessary that the servant or servants at fault have the authority of the master to do the particular thing which was done. Under certain circumstances the master may be liable if the act of the servant was contrary to the master's express orders. But to hold the master liable the act must always have been done in furtherance of the master's business.

*Id.* at 357–58.

*Baker v. Chicago, Burlington & Quincy Railroad Co.*, 327 Mo. 986, 39 S.W.2d 535 (1931), provides a good example of this distinction. In that case, a railroad foreman was displeased with the manner in which the plaintiff, a railroad employee, had placed railroad ties on a pile. *Id.* at 541. The foreman called the plaintiff a "vile and obscene epithet," and the plaintiff rebuked the foreman for calling him names. *Id.* In response to the plaintiff's rebuke, the foreman "rushed up and brushed against" plaintiff with such violence that plaintiff fell out of the car and to the ground below, causing him injury. *Id.* This Court found the railroad was liable for the injury, because:

> The inference derivable from plaintiff's testimony is not refuted that the foreman was overseeing and directing the plaintiff, and other employees of defendant railroad carrier, in the loading of the flat car and in the piling of the ties thereon, and that the foreman was acting in the course of his duties, and in the furtherance of his employer's business, at the time of the occurrence in contro-

versy. Such act or conduct of the foreman in rushing up and brushing against plaintiff, although it be [willful] and intentional on the part of the foreman, and although it amount to an assault upon the plaintiff, is held to constitute "negligence" within the purview of the Federal Employers' Liability Act (45 USCA ss 51–59) and to render the foreman's employer, the railroad carrier, actionably liable for injuries suffered by an employee of the railroad carrier, and resulting from such "negligence" of the railroad carrier's foreman.

*Id.* at 541–42. In other words, because the foreman pushed the plaintiff in an effort to get the plaintiff to better perform his work, the railroad was liable for the injury, even though, of course, the railroad had not directed or approved of the foreman pushing employees.

By contrast, in *Reeve v. Northern Pacific Railway. Co.*, 82 Wash. 268, 144 P. 63 (1914), some railroad employees were playing around, wrestling and scuffling in a railroad car, when one accidentally pushed into the plaintiff and knocked him to the ground. *Id.* at 64. The plaintiff was injured when he fell. *Id.* The court found the railroad was not liable under FELA because the conduct of the co-employees in playing around was not in furtherance of any interest of the railroad, stating: "For the employer to be held liable, in damages, for an injury to an [employee], the injury must not only arise out of, but it must also occur in the course of the employment." *Id.* (quotation marks omitted).

This Court's interpretation of FELA— requiring that a negligent act by a co-employee be in furtherance of the employer's business to impose vicarious liability on the employer for injuries caused by that act—is the same followed by the vast majority of federal courts that have ad-

dressed the issue of co-employee liability under FELA.

In *Gallose v. Long Island Railroad Co.*, the Second Circuit held that, for an employer to be vicariously liable for a co-employee's actions that inflict injury on another employee, "not only must the injured employee be acting within the scope of employment at the time of injury ..., but the employee whose conduct causes the injury must also be acting within the scope of his employment." 878 F.2d 80, 83 (2d Cir.1989) (internal citation omitted). In that case, the Second Circuit weighed whether a FELA employer was liable for an employee's dog-bite injury caused by a dog a co-employee brought to work. *Id.* at 83. *Gallose* reasoned that the relevant question in the case was whether the co-employee's conduct in bringing the dog to work was an attempt to further her employer's interest within the limits of her employment duties. *Id.* at 83–84.

The Tenth Circuit also requires the acts of an injury-causing employee be in furtherance of employer's business to hold a FELA employer vicariously liable. *Copeland v. St. Louis–San Francisco Ry. Co.*, 291 F.2d 119, 121–22 (10th Cir.1961). In *Copeland,* a co-employee played a prank on another employee that injured him while both employees were working. *Id.* at 119–20. The Tenth Circuit held that the "acts of the fellow employee which caused plaintiff's injury were wholly outside the scope of his employment, intended only to further his own interests, and not those of his employer, and were not chargeable to his employer." *Id.*

The Jones Act is FELA's sister statute and applies the same standard of liability for employers as FELA in co-employee vicarious liability cases. *Lancaster v. Norfolk and W. Ry., Co.,* 773 F.2d 807, 817 (7th Cir.1985). The Seventh Circuit rejected the notion that the Jones Act and FELA set aside the common law principles of *respondeat superior. Sobieski v. Ispat Island, Inc.,* 413 F.3d 628, 633 (7th Cir. 2005). The court explained that "[a]lthough FELA dispenses with certain common law defenses, nothing in its express terms ... indicates Congress's intent that we set aside common law principles of *respondeat superior,* and most courts have continued to apply traditional rules of *respondeat superior* for both negligence and intentional tort cases." *Id.* Accordingly, the Seventh Circuit held that, under the Jones Act (and, by logical implication, FELA), for an employer to be liable for an injury caused by a co-employee, the plaintiff-employee must show that the injury-causing employee's conduct was in furtherance of the employer's business. *Id.* at 633–34.[5] Applying these principles here,

---

**5.** *Accord Higgins v. Metro–North R.R. Co.,* 318 F.3d 422, 426 (2d Cir.2003) (an employer was not liable under *respondeat superior* liability for sexual harassment committed by a co-employee where they were motivated solely by the co-employee's own desires and not to further or benefit the employer); *Mullahon v. Union Pac. RR.,* 64 F.3d 1358, 1362 (9th Cir.1995) (The trial court correctly directed a verdict for the railroad on theory of *respondeat superior* liability for murder of one employee by another because the employee's murder of his foreman was not in furtherance of the railroad's business. "That the murder occurred at the work site, or was committed as revenge for being worked too hard, [was] not

sufficient evidence that it furthered the employer's interests."); *Brooks v. Washington Terminal Co.,* 593 F.2d 1285, 1288–89 (D.C.Cir.1979) (railroad was not liable for injuries caused by one employee when assaulting another as "there is no reason to believe he was acting, or supposed he was acting, in furtherance of the defendant's business"). While the dissent cites *Baker v. Baltimore,* 502 F.2d 638, 641 (6th Cir.1974), for the proposition that *respondeat superior* is inapplicable in FELA cases, it cited no precedent for its suggestion that the normal rules of *respondeat superior* do not apply in FELA, and it remains

to submit an imputed negligence theory under FELA, Plaintiff was obligated to make a submissible case that he and Clark were acting within the scope and course of their employment, that is, that Clark's negligent conduct was undertaken in furtherance of the interests of the employer.

### B. Plaintiff Failed to Offer Instructions Properly Submitting the Railroad's Respondeat Superior Liability

The trial court's refusal to give a party's proffered instruction is reviewed *de novo*, evaluating whether the instructions were supported by the evidence and the law. *Marion v. Marcus*, 199 S.W.3d 887, 893 (Mo.App.2006). The trial court's judgment will be reversed only if such an error results in prejudice and materially affected the merits of the action. *Id.* at 894.

Plaintiff proposed instructions 7D and 7J were offered on the basis that Plaintiff was not required to show that Clark's conduct was within the course and scope of

the only federal court of appeals case to so hold.

6. Plaintiff's Proposed Instruction 7D stated:
 Your verdict must be for plaintiff if you believe:
 First, defendant's employee failed to warn plaintiff that he had placed a loaded gun with the safety set to "off" in his luggage[,] and
 Second, defendant's employee was thereby negligent, and
 Third, such negligence resulted in whole or in party in injury to plaintiff
 Plaintiff's proposed instruction 7J stated:
 Your verdict must be for plaintiff if you believe:
 First, Larry Clark failed to warn plaintiff of an unsafe condition[,] and
 Second, Larry Clark was thereby negligent[,] and
 Third, such negligence resulted in whole or in part in injury to plaintiff.

7. Plaintiff's proposed instruction 7E stated:

employment in order to submit vicarious liability against the railroad. Those instructions simply required the jury to find that Clark failed to warn Plaintiff either of the presence of the loaded gun in his luggage with the safety off or of the presence of an unsafe condition.[6] For the reasons discussed above, the proposed instructions did not accurately state the law. A railroad cannot be held vicariously liable without proof that the negligent co-employee was acting within the scope and course of his employment.

Plaintiff also proposed instructions 7E and 7H. These instructions added a paragraph that submitted the question of whether Clark "was acting within the scope and course of his employment by defendant Union Pacific Railroad" either at the time of the incident, or generally in preparing to enter the hotel.[7] Even though both contained the words "course and scope of employment," neither accurately instructed the jury as to applicable *respondeat superior* principles.

Your verdict must be for plaintiff if you believe:
First, Larry Clark was acting within the scope and course of his employment by defendant Union Pacific [R]ailroad at the time of the gunshot incident[,]
Second, Larry Clark failed to warn plaintiff that he had placed a loaded gun with the safety set to "off" in his luggage[,]
Third, Clark was thereby negligent, and
Fourth, such negligence resulted in whole or in part in injury to plaintiff.
Plaintiff's proposed instruction 7H stated:
Your verdict must be for plaintiff if you believe:
First, Larry Clark was preparing to enter a hotel within the course and scope of his employment by defendant Union Pacific Railroad[,] and
Second, Clark failed to warn plaintiff of an unsafe condition[,] and
Third, Clark was thereby negligent, and
Fourth, such negligence resulted in whole or in part in injury to plaintiff.

Instruction 7E addresses "course and scope of employment" as a temporal test, asking whether Clark was in the course and scope of employment at the *time* of the gunshot incident. As discussed above, that is not the test. Rather, the test is whether the injury-causing act was "done by virtue of the employment and in furtherance of the business or interest of the employer." *Daugherty*, 260 S.W.3d at 873 (emphasis removed). Instruction 7E would mislead the jury, focusing their attention only on the timing of the incident, not whether Clark's conduct was done in furtherance of Union Pacific's business interest.

Instruction 7H is inaccurate for a similar reason. While the instruction does relate the "course and scope of employment" phrase to Clark's general conduct of preparing to enter a hotel, it again only refers to the circumstances surrounding Clark's injury-causing conduct. Instruction 7H does not address whether the conduct of carrying the pistol in his luggage was in furtherance of Union Pacific's business interest. Plaintiff is obligated to present evidence not just that he and his co-employee were acting at the direction of the employer generally, but that the negligent act was committed in furtherance of the employer's interests, even if not directly authorized or approved by the employer. *Lavender*, 219 S.W.2d at 357–58. As such, instruction 7H also improperly applies the course and scope test of *respondeat superior* liability.[8]

For these reasons, Plaintiff's proposed instructions—7D, 7J, 7E, and 7H—were not supported by the law and Plaintiff was not entitled to have the trial court submit a faulty instruction to the jury. *Sw. Bell Tel. Co. v. Chester A. Dean Constr. Co*, 370 S.W.2d 270, 279 (Mo.1963).

### C. Trial Court Did Not Have an Independent Duty to Create Its Own Correct Instruction

▇▇▇ Finally, Plaintiff contends that if his submitted verdict-directing instructions were inaccurate as to the law, in a civil case, the trial court is required to submit an accurate instruction in place of his inaccurate proposed instructions. Plaintiff is incorrect.[9]

▇▇▇▇ It is true that a party is entitled to an instruction upon any theory supported by the evidence. *Vandergriff v. Mo. Pac. R.R.*, 769 S.W.2d 99, 104 (Mo. banc 1989) (holding that the defendant's comparative fault instruction was supported by the evidence and the trial court did not err in submitting it). This Court, however, made clear that even when a party is entitled to have an instruction submitted, the trial court does not have a duty to submit a correct instruction in the place of the parties' erroneous instruction. *Sw. Bell*, 370 S.W.2d at 279.

In *Southwestern Bell*, the defendants submitted two instructions conversing plaintiff's verdict-directing instructions,

---

8. Because the instructions at issue were insufficient in failing to submit the issue of *respondeat superior* liability to the jury, there is no need to address Plaintiff's contention that he was entitled to submit his case under a "failure to warn" theory.

9. The analysis of this question is limited to civil cases. With regard to mandatory instructions in certain criminal cases, the trial court is required to submit a proper mandato-

ry instruction when the parties fail to submit such an instruction in proper form. *See, e.g.*, *State v. Westfall*, 75 S.W.3d 278, 281 n. 9 (Mo. banc 2002) (holding that, once the defendant "injected self-defense into the case," the trial court was obligated to submit a correct self-defense instruction "in the absence of a request for such an instruction, and even if such an instruction was offered but not in proper form").

both of which omitted essential elements of the issue to be conversed. *Id.* at 278. The trial court refused to submit both instructions to the jury, and the defendants argued that the failure to submit those instructions was reversible error. *Id.* at 279. This Court held that, even though the defendants were "entitled" to a converse instruction, the trial court did not err in refusing to submit the conversing instructions because each omitted an essential part of the issue to be conversed. *Id.* at 277, 279. Further, this Court held that the trial judge was under no duty to modify or correct the defendants' erroneous instructions. *Id.* at 279; *see also Wors v. Glasgow Vill. Supermarket, Inc.,* 460 S.W.2d 583, 589 (Mo.1970) (stating that the trial court is under no duty to modify an incorrect tendered withdrawal instruction or to provide a correct instruction on its own motion).

 *Southwestern Bell* illustrates that although a party is entitled to have its own instruction submitted to the jury if it is correct, this entitlement does not impose a duty on the trial court to draft a proper instruction when the parties fail to submit a correct instruction.

While this Court never has addressed whether it is reversible error for the trial court to refuse to submit an incorrect verdict-directing instruction based upon a party's theory of the case, the court of appeals in *Black v. Cowan Constr. Co.,* 738 S.W.2d 617 (Mo.App.1987), addressed the duty of the trial court in the absence of correct verdict-directing instructions. The court of appeals stated: "Ordinarily, it is the duty of an attorney for a party to aid the court in giving proper instructions which support that party's claim." *Id.* at 620. "When counsel fails to render such aid, the trial judge should refuse to submit the case to the jury." *Id.* (citing *Dorman v. E. St. Louis Ry. Co.,* 335 Mo. 1082, 75

S.W.2d 854, 859 (1934)). The court of appeals' reasoning is persuasive.

In this case, Plaintiff submitted many instructions but failed to submit a correct verdict-directing instruction reflecting the required element that Clark's relevant injury-causing conduct was within the course and scope of employment. The trial court gave Plaintiff numerous chances to submit a correct instruction, and Plaintiff was unsuccessful. The trial court did not commit reversible error in refusing to submit Plaintiff's faulty instruction, and it was under no duty to draft a correct instruction for Plaintiff.

### III. Conclusion

The trial court did not commit reversible error. The judgment is affirmed.

BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., concur.

TEITELMAN, C.J., dissents in separate opinion filed.

DRAPER, J., concurs in opinion of TEITELMAN, C.J.

RICHARD B. TEITELMAN, Chief Justice, dissenting.

I respectfully dissent. The principal opinion holds that proposed instructions 7E and 7H are inaccurate because neither instruction requires the jury to find that Clark's specific act of carrying a loaded pistol in his luggage was committed in furtherance of Union Pacific's interests. The conduct at issue is not the specific negligent act of carrying a loaded gun to work. The conduct at issue is Clark's failure to warn Cluck of the danger posed by the gun while both were performing a work-related task. Therefore, I would hold that proposed instructions 7E and 7H accurately state the law of *respondeat superior* liability.

As the principal opinion notes, the course and scope of employment is a test of whether "the conduct" of an employee is "performed in furtherance of the employer's business." *Stanley v. City of Independence*, 995 S.W.2d 485, 487 (Mo. banc 1999). The principal opinion identifies "the conduct" at issue as Clark's specific negligent act of carrying a loaded pistol in his luggage. By identifying "the conduct" at issue as the specific act of carrying a loaded gun, the principal opinion reaches the conclusion that Cluck's proposed instructions improperly recast the "course and scope of employment" test as a purely temporal test. The logic of this conclusion is sound, but it is based on the incorrect premise that the course and scope of employment analysis looks solely at whether the specific negligent act that caused the injury was an action that actually furthered the employer's interests. There are two central problems with this premise.

First, defining "the conduct" at issue as the specific negligent act of carrying a loaded gun to work is inconsistent with the analysis of *respondeat superior* liability. The analysis of *respondeat superior* liability explicitly recognizes that actions occur in a context. For purposes of *respondeat superior* liability, the relevant context is whether the injury causing conduct was undertaken in the course and scope of employment. To determine whether an injury causing act was performed in the course and scope of employment, the act must have been "done by virtue of employment and in furtherance of the business interest of the employer." *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 (Mo.App.2008). The course and scope of employment test, therefore, requires an assessment of the context in which the injury causing conduct occurred. Even though a specific act of negligence is what caused the injury, liability is premised on whether that act was performed within the context of "course and scope" of employment aimed at furthering the employer's business interests. If, on the other hand, the entire course and scope of employment analysis is distilled into an assessment of whether a contextually isolated, specific act of negligence furthered the employer's business, then *respondeat superior* liability is effectively abolished except for the occasional case in which a supervisor assaults a subordinate in order to enforce a work order or orders that a work-related task be performed in an unreasonably dangerous manner. If that were the case, employers would be free to reap the benefits of their employees' labor while avoiding liability for most injuries sustained during the course of that labor.

Second, the principal opinion asserts that *Lavender v. Illinois Central Railroad Co.*, 358 Mo. 1160, 219 S.W.2d 353 (1949), is directly on point and demonstrates that course and scope of employment test looks at Clark's specific act of carrying a loaded gun in his luggage.[1] In *Lavender*, the employer was not liable because the gunshot was a result of "horseplay" that was wholly unrelated to the performance of a work-related task. *Id.* at 358. The gunshot occurred while the employees were freelancing their time and, by definition, undertaking no actions in the furtherance of the railroad's business. In contrast, Cluck was injured while he and Clark were unloading luggage on a business trip. It

1. The principal opinion also cites *Reeve v. Northern Pacific Railway Co.*, 82 Wash. 268, 144 P. 63 (1914), and *Copeland v. St. Louis–San Francisco Ry. Co.*, 291 F.2d 119, 121–22 (10th Cir.1961). Like *Lavender*, *Reeve* and *Copeland* were "horseplay" cases in which the employees were engaged in a course of conduct that had no conceivable relationship to the employer's business.

was during the course of this work-related activity, indisputably performed in furtherance of Union Pacific's business, that Clark was injured. *Lavender* is inapposite.

Instead of focusing on the specific negligent act of bringing a loaded gun to work, the focus should be on whether Cluck's injury was caused by a negligent act that was committed as part of a general course of conduct aimed at furthering the employer's interests. Under this standard, Cluck's proposed instructions are sufficient. Although the principal opinion states that the negligent conduct at issue is Clark's act of carrying a loaded pistol, the theory of liability posited in instructions 7E and 7H was that Clark "failed to warn" Cluck of a loaded gun in the luggage. Both instructions require the jury to find that Clark's failure to warn was an act committed while Clark otherwise was acting in the course and scope of his employment. Instructions 7E and 7H accurately state the law with respect to vicarious liability in a FELA claim when the course and scope of employment is disputed.

"[A] party is entitled to an instruction upon any theory supported by the evidence." *Vandergriff v. Mo. Pac. R.R.*, 769 S.W.2d 99, 104 (Mo. banc 1989) (quoting *Hopkins v. Goose Creek Land Co., Inc.*, 673 S.W.2d 465, 467 (Mo.App.1984)). There is no dispute that Clark stored the gun in his luggage on a work-related trip and that he failed to warn Clark of the gun as they unloaded the luggage on that work-related trip. Cluck was injured because Clark failed to warn him of a negligently created, dangerous aspect of a work-related task. Cluck's proposed instructions accurately stated the law and are supported by the evidence. The circuit court erred in failing to instruct the jury on Cluck's elected theory of vicarious liability as set forth in Instruction 7E or Instruction 7H. Cluck was prejudiced by this error because he was deprived of the opportunity to submit his case to the jury on a vicarious liability theory that is supported by the evidence. I would reverse the judgment and remand for a new trial.