

# In the Missouri Court of Appeals Eastern District

## DIVISION TWO

ROBERT L. JOHNSON, )
)
    Respondent/Cross-Appellant, ) ED101018
)
v. ) Appeal from the Circuit Court
) of St. Louis County
AUTO HANDLING CORPORATION, ) 10SL-CC01851-01
)
    Cross-Respondent, ) Honorable Thomas J. Prebil
)
and )
) Filed: April 12, 2016
COTTRELL, INC., )
)
    Appellant/Cross-Respondent. )

## Introduction

This is a products liability case resulting in a partial verdict for the plaintiff, Robert Johnson (Johnson), against one of the defendants, Cottrell, Inc. (Cottrell). Before submitting the case to the jury, the trial court directed a verdict in favor of the other defendant, Auto Handling Corporation (AHC). Cottrell appeals the judgment in favor of Johnson, and Johnson cross-appeals the directed verdict in favor of AHC. We reverse and remand for a new trial.

## Background

Johnson worked as a commercial truck driver from 1976 until 2008, hauling cars for Jack Cooper Transport. Johnson was also a member of the Teamsters Union, and his employment was governed by a collective bargaining agreement (CBA).

On July 3, 2007, Johnson was loading cars onto his rig, which was manufactured by Cottrell. The rig was equipped with a chain and ratchet system for securing the vehicles to the rig. Before his trip to transport the vehicles on his rig, Johnson checked to make sure the vehicles were secure and noticed two chains had come loose. As he was tightening one of them, an idler, which was part of the chain and ratchet system, broke and released the tension in the chain suddenly. Johnson fell backward and landed on his tailbone, resulting in severe pain. After a few minutes, he was able to pull himself up and continue securing the vehicle to the rig. He called and reported his injury, but he felt able to deliver the vehicles as scheduled that day.

Later that day, there was another incident in which a hook came loose while Johnson was tying down a vehicle. He started to fall but was able to catch himself, and he ended up sitting down on the ramp of the trailer. He was not hurt from that incident.

Johnson continued working for about a week, but he was experiencing pain in his lower back and down his right leg that was continually getting worse. He underwent treatment, including surgery. He eventually returned to work in August of 2008. Johnson had pain during this time, and after about four months, he slipped on some ice at work and injured his neck. He had another surgery associated with that injury, and it

2

took approximately one year to recover. However, because of continuing pain in his back, he did not return to work.

Johnson filed the present lawsuit against Cottrell, which included claims of strict liability, negligence, and failure to warn, associated with both the broken idler and the broken hook. Johnson also filed suit against AHC, who had been in charge of maintenance for Johnson's rig. As relevant to this appeal, Johnson alleged that there were problems both in Cottrell's chain and ratchet system as a whole, as well as in the idler itself. Johnson also alleged that the idler that broke had been repaired with a faulty weld by AHC.

At the close of Johnson's evidence, the trial court directed a verdict in favor of AHC, finding that Johnson failed to present evidence that AHC was actually responsible for any faulty weld. At the conclusion of trial, the jury returned a partial verdict in favor of Johnson. They did not find Cottrell strictly liable, but they did assess 55 percent fault against Cottrell on Johnson's claim of negligence, and 49 percent fault against Cottrell on Johnson's claim of failure to warn. The jury found Johnson suffered damages of $2,091,513.45, but they did not award punitive damages. In accordance with the verdicts, the trial court assigned $1,150,332.40 in compensatory damages from Cottrell to Johnson, representing Cottrell's 55 percent fault. This appeal follows.

## Discussion

Cottrell raises six points on appeal, arguing that the jury returned inconsistent verdicts, there was insufficient evidence to support Johnson's claim of failure to warn, the trial court gave an erroneous verdict directing instruction for negligence, evidence of post-sale alteration of the idler defeated Johnson's claims against Cottrell, and Johnson's

3

claims were preempted due to the CBA governing Johnson's employment. Johnson cross-appeals, arguing the trial court erred in directing a verdict in favor of AHC and that the trial court abused its discretion in excluding evidence of other injuries that resulted from the use of Cottrell's chain and ratchet system. We discuss each party's appeal in turn. Because Cottrell's third and fourth points on appeal are dispositive, we discuss only those points.[1]

## Cottrell's Appeal

Cottrell argues in Point III that the trial court erred in giving Instruction 10, the verdict director for negligent design defect and failure to warn. Cottrell argues that the trial court failed to use the applicable Missouri Approved Instruction (MAI) for products liability, and that Instruction 10 omitted required elements of both negligent design defect and negligent failure to warn. Cottrell argues in Point IV that Instruction 10 was so vague that it created a roving commission for the jury. We agree the trial court erred in giving Instruction 10.

Whether the jury is properly instructed is a question of law that we review *de novo*. Chavez v. Cedar Fair, LP, 450 S.W.3d 291, 294 (Mo. banc 2014). We will "vacate a judgment on the basis of an instructional error if that error materially affected the merits of an action." Id. (quoting Coomer v. Kansas City Royals Baseball Corp., 437 S.W. 3d 184, 191 (Mo. banc 2014)). "[T]he party challenging the instruction must show that the

---

[1] We note that Cottrell's sixth point, arguing that all of Johnson's claims were preempted by federal law due to evidence regarding the collective bargaining agreement here, was not preserved because Cottrell failed to raise this issue in its motion for directed verdict. See Bailey v. Hawthorn Bank, 382 S.W.3d 84, 100 (Mo. App. W.D. 2012) (citing Howard v. City of Kansas City, 332 S.W.3d 772, 790-91) (Mo. banc 2011)). Such failure precludes the trial court from granting a judgment notwithstanding the verdict (JNOV) on this basis, as well as this Court from reviewing the trial court's denial of JNOV on that basis. Bailey, 382 S.W.3d at 99 (quoting Marquis Fin. Servs. of Ind. v. Peet, 365 S.W.3d 256, 259 (Mo. App. E.D. 2012)). Cottrell does not request plain error review or argue that a manifest injustice or miscarriage of justice occurred, and we decline to review this point. See Bailey, 382 S.W.3d at 100.

4

offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." Id.

Cottrell's first argument is that Instruction 10 was not patterned after the applicable MAI. "Where a Missouri Approved Instruction is applicable, its use is mandatory and failure to do so is presumed prejudicial." Pace Props., Inc. v. Am. Mfrs. Mut. Ins. Co., 918 S.W.2d 883, 887 (Mo. App. E.D. 1996). In a case of failure to use the appropriate MAI, the proponent of the given instruction bears the burden of demonstrating that it did not prejudice the opponent. B.A. Sales, Inc. v. Murray, 274 S.W.3d 475, 478 (Mo. App. S.D. 2008) (citing Murphy v. Land, 420 S.W.2d 505. 507 (Mo. 1967)).

Here, the trial court gave Instruction 10, adapted from the instruction Johnson offered:

> On the claim of [Johnson] for personal injury based on negligence of [Cottrell], you must assess a percentage of fault . . . if you believe:
>
> First, either
>
> (a)  [Cottrell] failed to review and analyze injury and testing data; or
>
> (b)  [Cottrell] failed to supply the trailer with alternative vehicle securement systems including straps, wheel chocks, cables, enclosed idlers, a hydraulic tie-down system, a pneumatic tie-down system, or a worm-gear tie-down system; or
>
> (c)  [Cottrell] failed to share industry reports and injury data with [Johnson]'s employer; or
>
> (d)  [Cottrell] designed a chain and ratchet system that required excessive force during operation; and

5

Second, [Cottrell], in any one or more of the respects submitted in paragraph First, was thereby negligent; and

Third, such negligence directly caused or directly contributed to cause damage to [Johnson].

This instruction was based on MAI 17.02, entitled "Multiple Negligent Acts Submitted," which is in chapter 17.00, entitled "Verdict Directing—Motor Vehicles." Johnson argues he chose this instruction because MAI 17.02 allows for the submission of multiple negligent acts, and he sought to submit negligent design defect as well as ordinary negligence to the jury. Johnson further modified Instruction 10 by MAI 19.01, an optional verdict directing modification for the submission of multiple causes of damage, which resulted in the language in paragraph Third.[2]

Cottrell argues that MAI 17.02 was not the proper verdict director because it relates to motor vehicles. Cottrell further argues MAI 17.02 omits elements required for Johnson's negligence claims here, such as a finding that Cottrell designed or manufactured the chain and ratchet system and idler. Cottrell submits that MAI 25.09, entitled "Product Liability—Negligent Manufacture, Design, or Failure to Warn" directly addresses Johnson's claims here and was mandatory. We agree.[3]

MAI 25.09 provides the following:

Your verdict must be for plaintiff if you believe:

---

[2] MAI 19.01 provides the following in relevant part:

In a case involving two or more causes of damage, the "direct result" language . . . of verdict directing instructions such as 17.01 and 17.02 might be misleading. In such cases, at plaintiff's option, one of the following may be substituted:
Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

[3] MAI 17.02 has been utilized in cases not involving motor vehicles. E.g., Abbot v. Mo. Gas Energy, 375 S.W.3d 104, 107 (Mo. App. W.D. 2012) (noting MAI 17.02 was used in case involving gas company's negligent failure to inspect, repair, and respond to gas leak, but court did not analyze whether MAI 17.02 was proper). However, we have found no products liability case using MAI 17.02.

First, defendant [manufactured] [designed] the *(describe product)*, and

Second, the *(describe product) (here describe alleged defect or hazard)*, and

Third, defendant failed to use ordinary care to [either] [[manufacture] [design] the (describe product) to be reasonably safe] [[or] adequately warn of the risk of harm from (here describe alleged defect or hazard)], and

Fourth, as a direct result of such failure, [in one or more of the respects submitted in paragraph Third,] plaintiff sustained damage.

This instruction allows for the submission of either a claim of negligent design or a claim of negligent failure to warn in a products liability case. In the notes to MAI 25.09, it also provides that a party can choose to submit both in the disjunctive. These are essentially the two claims Johnson submitted in Instruction 10.[4]

Johnson disagrees, arguing that MAI 25.09 was inappropriate because he did not only allege negligent design defect, but also ordinary negligence. However, the four specific negligent acts that the trial court allowed Johnson to submit fell into the categories of either negligent design defect or negligent failure to warn, both of which are encompassed in MAI 25.09.[5] Subparagraph (b) of Instruction 10, alleging that Cottrell failed to supply the trailer with alternative vehicle securement systems, along with subparagraph (d), alleging that Cottrell designed a chain and ratchet system that required excessive force during operation, both addressed Cottrell's design of the trailer, specifically the system containing the idler that broke. Thus, both of these subparagraphs allege negligent design defect.

---

[4] Additionally, the trial court could have applied MAI 19.01 to modify the "direct result" language of MAI 25.09, as it did in Instruction 10.

[5] Johnson does not argue on appeal that the trial court should have allowed him to include additional negligent acts in the verdict director.

7

Subparagraph (a) alleged that Cottrell failed to review and analyze injury and testing data. Johnson's attorney made clear during the instruction conference that this subparagraph addressed a manufacturer's "obligat[ion] to keep abreast of any scientific developments and information pertaining to the dangers associated with its product and notify its customers of dangers." Similarly, subparagraph (c) alleged Cottrell failed to share industry reports and injury data with Johnson's employer. In discussion of this subparagraph during the instruction conference, Johnson's counsel argued that "a manufacturer . . . ha[s] the duty to warn its customers about the dangers with its product." Both of these subparagraphs allege negligent failure to warn.

Thus, MAI 25.09 was the proper instruction, and its use mandatory. See Pace Props., Inc., 918 S.W.2d at 887 (where MAI is applicable its use is mandatory); cf. Moore v. Ford Motor Co., 332 S.W.3d 749, 764 (Mo. banc 2011) (noting elements of negligent failure to warn claim are found in MAI 25.09). In light of this, we presume Cottrell was prejudiced by the failure to use MAI 25.09, and it is Johnson's burden to make it clear no prejudice resulted. Abbott v. Mo. Gas Energy, 375 S.W.3d 104, 109 (Mo. App. W.D. 2012). He cannot do so here.

In addition to the error in the form of the instruction, the wording of the four alleged acts of negligence in subparagraphs (a) through (d) was improper here also. "A proper instruction submits only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another." Twin Chimneys Homeowners Ass'n v. J.E. Jones Constr. Co., 168 S.W.3d 488, 498 (Mo. App. E.D. 2005). The ultimate facts here regarding negligence on Cottrell's part were whether there was a defect in the design of the chain and ratchet

8

system, or whether Cottrell failed to warn Johnson or his employer about dangers associated with the chain and ratchet system. MAI 25.09. The specifics of Cottrell's alleged failures listed in Instruction 10 were more properly for the attorneys to argue from the evidence, but the jury was tasked to determine whether those actions established either a design defect or a failure to warn.

As written, Instruction 10 is confusing and failed to direct the jury to the ultimate facts, which is the jury's duty to find. For instance, Instruction 10 allowed the jury to find liability based on the fact that Cottrell "failed to review and analyze injury testing data," and "was thereby negligent," but the only reason that factual finding would matter is if that failure meant Cottrell negligently *failed to warn of dangers* Cottrell would have discovered had it reviewed and analyzed injury testing data. The ultimate fact was not simply the review of data, but whether Cottrell negligently failed to warn of dangers present. Similarly, a finding that Cottrell "failed to share industry reports and injury data with [Johnson]'s employer" is far too broad in that there is no connection between those reports and data and the accident here. Such broad language invites a roving commission. See McNeil v. City of Kansas City, 372 S.W.3d 906, 910 (Mo. App. W.D. 2012) ("[w]here an instruction submits a question to the jury in a broad, abstract way without being limited to any issues of fact or law developed in the case, it may be considered a 'roving commission'"); Lashmet v. McQueary, 954 S.W.2d 546, 550 (Mo. App. S.D. 1997) (jury instruction may be considered roving commission when "too general"). Again, the ultimate fact was whether Cottrell failed to warn of specific dangers present in the system that resulted in injury to Johnson.

9

Finally, Johnson argues that even if Instruction 10 was erroneous, Cottrell's proposed instruction was also erroneous, thus the trial court was not required to give it, citing Cluck v. Union Pacific Railroad Company, 367 S.W.3d 25, 33 (Mo. banc 2012) ("the trial court does not have a duty to submit a correct instruction in the place of the parties' erroneous instruction"). However, it was not Cottrell's duty to proffer instructions for Johnson's claims. "Ordinarily, it is the duty of an attorney for a party to aid the court in giving proper instructions which support that party's claim." Id. at 34 (quoting Black v. Cowan Constr. Co., 738 S.W.2d 617, 620 (Mo. App. S.D. 1987)). It is true that where counsel fails to submit correct instructions, the trial court does not have a duty to correct them. Id. at 33. Instead, the trial court "should refuse to submit the case to the jury." Id. at 34.

In conclusion, Instruction 10 was improper, and Johnson has failed to overcome the presumption of prejudice from the trial court's failure to give the appropriate MAI. Rather than refusing to submit Johnson's claim, the trial court erred in submitting it with an incorrect instruction. Thus, we must reverse the judgment and remand for a new trial.[6]

### Johnson's Cross-Appeal

Johnson raises two points in his cross-appeal. First, he argues that the trial court erred in directing a verdict in favor of AHC because there was sufficient evidence

---

[6] We note that Instruction 10 addressed only Johnson's claims of negligence, and not strict liability. One of Cottrell's arguments on appeal is that the verdicts were inconsistent because, according to some federal authority, the burden for establishing negligence is higher than for strict liability. Cf. Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 n.2 (8th Cir. 1996); but see Randall v. Warnaco, Inc., Hirsch-Weis Div., 677 F.2d 1226, 1230-31 (8th Cir. 1982) (noting circumstances in which strict liability claim does not necessarily subsume negligence claim). Here, we do not reach that issue, but note only that Johnson's claims were intertwined, much of the evidence related to both his strict liability and negligence claims, and the infirm Instruction 10 undoubtedly affected the jury's deliberations, potentially on both claims. Thus, we reverse the jury's verdict on all claims and remand for a new trial. Cf. Overlap, Inc. v. A.G. Edwards & Sons, Inc., 318 S.W.3d 219, 228 n.10 (Mo. App. W.D. 2010) (reversing all claims because, among other things, claims were intertwined).

10

presented to submit Johnson's claims against AHC to the jury. Next, Johnson argues that the trial court erred in excluding evidence of other accidents involving Cottrell's chain and ratchet system. We discuss each in turn.

1. Submissibility of Claims Against AHC

In reviewing the trial court's grant of a motion for directed verdict, whether the plaintiff made a submissible case is a question of law we review *de novo*. Steward v. Goetz, 945 S.W.2d 520, 528 (Mo. App. E.D. 1997). To make a submissible case, there must be substantial evidence for every fact essential to liability. Id. We view the evidence in the light most favorable to submissibility, presuming its truth and granting the plaintiff the benefit of all reasonable inferences. Id.

Johnson argues that he presented substantial evidence that AHC was negligent in failing to warn Johnson of the broken idler and in failing to inspect, maintain, or repair the rig. We agree.

In order to show that AHC was negligent in any of the ways above, Johnson had to present evidence of the following elements: (1) a duty on the part of AHC to protect Johnson from injury, (2) failure of AHC to perform its duty, and (3) injury to Johnson as a result. See Weaks v. Rupp, 966 S.W.2d 387, 392 (Mo. App. W.D. 1998).

The issues in dispute on appeal primarily have to do with the second element, whether Johnson put forth sufficient evidence to show that AHC failed to fulfill its duty. Specifically, AHC argues that there was no evidence that AHC made the faulty repair to the idler that broke, and no evidence when the faulty repair was made and therefore whether AHC would have had an opportunity to discover it.

11

However, viewing the evidence in the light most favorable to the plaintiff, Johnson presented evidence of two different points at which the idler was compromised. One was that the original weld on the idler was faulty, leading over time to the idler breaking. The other was that someone eventually replaced the weld on the idler, but did so in a faulty manner. Johnson was entitled to present these two theories and it was up to the jury to determine whether one or both contributed to cause his accident. See Love v. Deere & Co., 684 S.W.2d 70, 75 (Mo. App. W.D. 1985) (evidence of repair as well as evidence of original product defect all presented to jury; "issue of proximate cause and intervening efficient cause [wa]s for the jury to decide").

Regarding the first theory, there was evidence from Johnson's expert that the original weld on the idler was faulty when Johnson's employer purchased the rig. There was also evidence that AHC provided primary maintenance on the rig over the course of three years. Additionally, Johnson presented evidence that he, as a driver, would not have been able to discover the faulty weld because it was located in a place not visible to drivers when they perform their pre-trip inspections. Rather, the weld could only have been observed by mechanics, who serviced the rigs from pits below the rigs. Thus, if this evidence was true, there was a defect in the original weld, and over the time that AHC provided maintenance for the rig, AHC failed to repair it.

Additionally, regarding Johnson's theory that the idler was also repaired with a faulty weld at some point after his employer purchased the rig, Johnson presented circumstantial evidence from which the jury could infer AHC was responsible for the faulty weld. Johnson's expert testified that Cottrell only used a type of weld called a MIG weld, and that the faulty weld was not a MIG weld. That left two possible parties

12

responsible for the faulty weld: Johnson's employer or AHC. There was no maintenance record in evidence for the repair of the weld. Johnson testified that his employer always made records of repairs, but on at least one occasion, AHC performed a repair and did not make a record of it. This creates an inference that AHC was responsible for the faulty weld, as the only party who made undocumented repairs. While we make no comment on the strength of this inference and cannot say which testimony the jury would have found credible, it relates to the weight of Johnson's case against AHC and not its submissibility.

Finally, AHC argues that aside from Johnson's negligence claim regarding an alleged failure to inspect, maintain, or repair; his failure to warn claim must fail because AHC had no duty to warn. In Missouri, "'suppliers' of products can be liable for failing to warn of a product's allegedly dangerous characteristics." Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006) (citing Hill v. Gen. Motors, 637 S.W.2d 382, 384 (Mo. App. E.D. 1982)). According to the Restatement (Second) of Torts, which Missouri has adopted, "suppliers" include "one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective *because of the work which he is employed to do upon it.*" Restatement (Second) of Torts § 388 cmt. c (1985) (emphasis added), quoted in Menz, 440 F.3d at 1004-5.

Accordingly, AHC only owed Johnson a duty to warn regarding any defects of any repairs performed by AHC, and not of dangers in the product as a whole separate from AHC's repairs. See Menz, 440 F.3d at 1005. Thus, Johnson's claim for AHC's failure to warn can succeed only to the extent the jury believes AHC was responsible for the faulty weld on the idler and AHC knew that it created a dangerous condition.

13

In summary, Johnson put forth substantial evidence from which the jury could have found either (1) that the weld was faulty from the beginning and AHC failed to inspect or repair it; or (2) that AHC negligently repaired the weld and failed to warn Johnson of a dangerous condition that AHC knew resulted from their faulty repair. Again, it is not for us to determine the strength of either claim when weighed against conflicting evidence; rather, it was the jury's responsibility to make this assessment. See Hargis v. Lankford, 372 S.W.3d 82, 89 (Mo. App. S.D. 2012) (quoting Metzger v. Schemesser, 687 S.W.2d 671, 674 (Mo. App. E.D. 1985)) ("in this era of comparative negligence . . . the respective degree of contribution of the negligence of multiple tortfeasors is generally [a] jury question"). The trial court erred in directing a verdict in favor of AHC. Point granted.

### 2. Exclusion of Accident Evidence

Finally, Johnson argues that the trial court erred in excluding evidence of other accidents involving Cottrell's chain and ratchet system, specifically those resulting from excessive force required by the system. While we reverse on other grounds, we briefly address this issue without ruling on it because it will undoubtedly recur upon retrial, and the trial court will have to revisit this issue and make an evidentiary ruling at that time.

At trial, Johnson sought to introduce four exhibits, consisting of at least two bankers boxes containing thousands of records of other accidents associated with chain and ratchet tie-down systems. The trial court ultimately excluded all accident reports, except for those regarding a broken idler. This left approximately 10 accident reports admitted into evidence.

14

In a products liability case, the test for determining the admissibility of evidence of other accidents is based on the degree of similarity to the accident that injured the plaintiff. See Thornton v. Gray Auto. Parts. Co., 62 S.W.3d 575, 583 (Mo. App. W.D. 2001). The occurrences need not be completely symmetrical. Id. (citing Pierce v. Platte-Clay Coop., Inc., 769 S.W.2d 769, 774 (Mo. banc 1989)). "To be similar, each occurrence must be (1) of like character, (2) occur under substantially the same circumstances, and (3) result from the same cause." Thornton, 62 S.W.3d at 583.

Here, Johnson argues that because his petition alleged that Cottrell's chain and ratchet system was defective because it required excessive force to operate, he was entitled to introduce evidence consisting at least of other accidents involving Cottrell chain and ratchet systems occurring because the system required excessive force, such as accidents in which the chain broke rather than the idler. During Johnson's offer of proof, his counsel stated they had divided the injury reports into those resulting from the requirement of excessive force in the chain and ratchet system, and others unrelated to the force level required. However, on appeal, we have only the four exhibits filed on a CD, and the various accidents are so voluminous we decline to parse through them. At retrial, Johnson must clearly sort out and delineate the accident reports Johnson is arguing should have been admitted here: those involving Cottrell chain and ratchet systems resulting in accidents due to excessive force required to use the system, in order for the trial court to be able to properly determine their relevance and admissibility.

## Conclusion

The trial court erred in giving Instruction 10 because it was not based on the applicable MAI, and because its language was vague and invited a roving commission.

15

Thus, we reverse the judgment and remand for a new trial on all of Johnson's claims against Cottrell. Further, the trial court's directed verdict in favor of AHC is reversed because Johnson put forth sufficient evidence from which the jury could find AHC responsible for the faulty weld.

_____
Gary M. Gaertner, Jr., Judge

Philip M. Hess, P.J., concurs.
Angela T. Quigless, J., concurs.