**ROCK PORT MARKET, INC., Respondent,**

v.

**AFFILIATED FOODS MIDWEST COOPERATIVE, INC., Appellant.**

**WD 79518**

Missouri Court of Appeals, Western District.

OPINION FILED: July 25, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 5, 2017

Application for Transfer Denied November 21, 2017

Kirk D. Holman and Matt J. O'Laughlin, Kansas City, MO, Attorneys for Respondent.

Susan Ford Robertson and J. Zachary Bickel, Kansas City, MO, Attorneys for Appellant.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and James Edward Welsh and Edward R. Ardini, Jr., Judges

Mark D. Pfeiffer, Chief Judge

Affiliated Foods Midwest Cooperative, Inc. ("Affiliated Foods") appeals from the judgment of the Circuit Court of Nodaway County, Missouri ("trial court"), entered following a jury verdict for compensatory and punitive damages in favor of Rock Port Market, Inc. ("Rock Port") on its claim of breach of the duty of good faith and fair dealing. We affirm in part and reverse in part.

## Factual and Procedural Background [1]

Rock Port was a grocery store in Rock Port, Missouri, owned by the Leisman family since 1949. In 1999 it submitted an application to become a member of Affiliated Foods, a Nebraska cooperative. Affiliated Foods obtained groceries at a discounted rate from food distributors and sellers because of its purchasing power and sold those groceries to member retail grocery stores. To become a member, Rock Port was required to make a membership deposit of $2,500 with its application, and thereafter make a membership investment of two percent of its weekly purchases from Affiliated Foods for the first year and one percent thereafter. As part of the

---

1. "We view the evidence in the light most favorable to the verdict, disregarding evidence to the contrary." *Turner v. Kansas City Pub. Sch.*, 488 S.W.3d 719, 722 (Mo. App. W.D. 2016).

membership agreement, Rock Port was required to accumulate a non-interest-bearing debenture bond in the amount of $50,000, from which Rock Port would derive an annual patronage rebate of the one percent weekly fee. If Rock Port ceased to be a member of Affiliated Foods, the bond would be returned to Rock Port without interest.

In 2008, Affiliated Foods had approximately 900 member stores. In September of that year, Affiliated Foods representative Richard York met with Hubert Turnbull of Nodaway County Bank, the banker for Roger Pennel, LouAnn Pennel, WC Farmer, Dr. Aron Burke, and Roger Livengood ("investor group"), to discuss a grocery business they were interested in starting in Rock Port, Missouri. Turnbull asked York for a pro forma or an estimated business plan. York had discussions in October with the investor group. On November 4, 2008, LouAnn Pennel notified York that the investor group had decided to move forward with the project. In November, York provided Turnbull a ten-page pro forma, which included financial projections based on weekly and annual sales, margins, expenses, insurance, store labor, laundry, and uniforms. Because York was aware that the investor group was going to apply for Tax Increment Financing ("TIF"), he included a $15,000 TIF projection. On December 22, 2008, York forwarded to an Affiliated Foods engineer photographs of a plat for the new store project to determine what size building would fit on that location. York also obtained building quotes for the new store project. In addition, the Affiliated Foods graphic design team provided proposed logo designs for the investor group. All of these services were provided to the investor group free of charge and at a time when the group was not a member of Affiliated Foods, an Affiliated Foods member—Rock Port—already operated a grocery store in this small community, and York believed that the investor group's prospective grocery store operation would likely force Rock Port out of business.

In January 2009, York visited with Rock Port and told the store owners that Affiliated Foods had been contacted by people who were interested in building a new grocery store in the town. In March 2009, Rock Port's attorney asked York to provide a letter to the owners regarding the sustainability of two stores in Rock Port, Missouri. York complied, stating in his letter:

> In my opinion, and my opinion only, it would be most beneficial to have only one grocery retail outlet in the community to continually meet purchase requirements not only from Affiliated Foods Midwest, but other direct store delivery vendors.... It would be a challenge for two retail outlets to survive in this community. Not impossible but not probable.

On June 4, 2009, York attended a TIF Commission meeting at the request of the investor group. When the size of the Rock Port, Missouri, grocery market and the viability of two stores were discussed, York expressed his opinion that it was possible, not probable, for two grocery stores to survive in that community, but it would be better to consolidate. That same day, York emailed Affiliated Foods' officers regarding his attendance at the TIF Commission meeting. He stated that he assumed the owners of Rock Port would say that he undermined them at the meeting: "I assume he [Michael Leisman] will threaten to leave [Affiliated Foods], but under the circumstances [Affiliated Foods] will be better served supplying new store with weekly purchases of 28- to 30,000 a week versus a failing store struggling to purchase 10,000 a week." On the date York

made the statement, Affiliated Foods had not even received a membership application or $2,500 deposit from the investor group, later to be known as FC Food Country.

In June or July 2009, the TIF for FC Food Country was passed. Thereafter, the investor group obtained a $315,000 loan from Nodaway Valley Bank to finance the new grocery business. FC Food Country started doing business out of the meat market owned by the Pennels before the new grocery store was built.

Affiliated Foods had a business relationship with Loyalty Lane, a company that provided reward cards for grocery stores. In July 2009, York emailed a Loyalty Lane representative, informing him that FC Food Country wanted to be a Loyalty Lane customer but not if Rock Port was going to be a Loyalty Lane customer. York stated: "Matt Leisman from the old store always talks a good story but never does anything[,] and they will probably go away within the year. I would suggest we sign up a new store as their yearly sales will be about 2.5 million versus the old store, which would be about $600,000 a year." Loyalty Lane responded: "Rich, per your request, we have told Roger and WC that we will give them a 5 mile exclusivity." FC Food Country received the five-mile exclusivity from Loyalty Lane.

The Leisman family closed Rock Port in December 2009 because "the playing field was not going to be equal." FC Food Country became a member of Affiliated Foods on June 29, 2010.

In 2012, Rock Port brought suit against Affiliated Foods for (1) breach of its duty of good faith and fair dealing, (2) fraudulent misrepresentation, and (3) breach of contract against Richard York, a claim that was dismissed by the trial court via summary judgment. In 2014, the matter was tried before a jury, which rendered verdicts in favor of Affiliated Foods on both remaining counts. Thereafter, the trial court granted Rock Port's motion for new trial, but only as to its claim of breach of duty of good faith and fair dealing. The case went to trial for the second time in 2015. At the close of Rock Port's evidence in the second trial, Affiliated Foods moved for a directed verdict "to request dismissal of the case as a matter of law for failure to establish the elements of proof necessary to permit submission to the jury," which was denied by the trial court. At the close of all the evidence, Affiliated Foods "renew[ed]" its motion made at the close of Rock Port's evidence, which was denied by the trial court.

At the instruction conference of the 2015 trial, counsel for Affiliated Foods objected to Rock Port's tendered verdict directing instruction and punitive damages instruction. The trial court overruled the objections and submitted both instructions to the jury.

After a three-day trial, the jury returned a verdict on Rock Port's claim for breach of the duty of good faith and fair dealing in favor of Rock Port and assessed actual damages against Affiliated Foods in the amount of $370,000. The jury assessed punitive damages against Affiliated Foods in the amount of $500,000. The trial court entered its judgment on December 6, 2015, for Rock Port on the jury's verdict and awarded it $870,000 ($370,000 as actual damages, and $500,000 as punitive damages).

Affiliated Foods moved for judgment notwithstanding the verdict, new trial, and/or remittitur, which was denied by the trial court, and Affiliated Foods timely appealed.

### Standard of Review

"Whether a jury was instructed properly is a question of law that this

[c]ourt reviews *de novo.*" *City of Harrison-ville v. McCall Serv. Stations*, 495 S.W.3d 738, 746 (Mo. banc 2016) (internal quotation omitted). Our review is conducted in the light most favorable to the record, and we will find submission of an instruction proper if any theory supports the instruction. *Id.* "The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.* (internal quotation omitted). We will reverse instructional errors "only if the error resulted in prejudice that materially affects the merits of the action." *Id.* (internal quotation omitted).

### Analysis

### Point I

In Affiliated Foods' first point, it asserts that the trial court erred in submitting Rock Port's claim for punitive damages to the jury because Rock Port had no cognizable claim for punitive damages. We agree.

### *Rock Port's Waiver Argument*

■ Rock Port first maintains that Affiliated Foods waived this argument because it failed to file a motion for judgment on the pleadings. This is an argument lacking any logic whatsoever as a party cannot seek a judgment on the pleadings for an issue that has *not even been pled.*

Initially, Rock Port filed a three-count petition alleging: (1) breach of the duty of good faith and fair dealing against Affiliated Foods; (2) fraudulent misrepresentation against Affiliated Foods; and (3) breach of contract against Richard York.

As to Count I, Rock Port alleged that an express or implied contract existed between Affiliated Foods and Rock Port, the terms of which included an implied cove-nant of good faith and fair dealing. Rock Port further alleged that Affiliated Foods breached its duty of good faith and fair dealing under the food cooperative member agreement by directly supporting the efforts of Rock Port's competitor, FC Food Country, prior to FC Food Country even becoming an Affiliated Foods member. Rock Port asked for an award of compensatory damages only.

As to Count II, Rock Port alleged that Affiliated Foods repeatedly and falsely represented to Rock Port that it would act solely in the interest of its members while acting to undermine Rock Port's business by supporting a competitor that was not a member. Rock Port alleged that it was injured as a direct and proximate result of Affiliated Foods' false statements because it continued to pay fees to Affiliated Foods while Affiliated Foods was actively working with a non-member to undermine Rock Port's business. Rock Port further alleged that Affiliated Foods' actions were "outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights" of Rock Port and asserted that Rock Port was entitled to punitive damages to punish Affiliated Foods and to deter Affiliated Foods and others from like conduct. Rock Port thus asked for both compensatory and punitive damages.

As to Count III, Rock Port separately alleged a separate breach of contract cause of action. However, the trial court granted summary judgment in favor of the defendants on this count and the trial court's ruling has not been appealed.

A jury trial was conducted in 2014 on the remaining counts against Affiliated Foods, which resulted in a jury verdict in favor of Affiliated Foods. Thereafter, the trial court granted Rock Port's motion for new trial *only* as to its claim against Affiliated Foods for breach of the duty of good faith and fair dealing, that is, Count I. Of

note, there was no allegation in Count I asserting that any conduct of Affiliated Foods justified the imposition of punitive damages, and there was no request for punitive damages in the prayer for relief as to Count I. Likewise, there was no allegation in Count I as to any special or fiduciary relationship as to Rock Port and Affiliated Foods. The case proceeded to a second trial in 2015 as to Count I only.

Simply put, where there was no pleading remaining in which punitive damages were requested by Rock Port at the time of the second trial, Affiliated Foods cannot be deemed to have waived its argument that punitive damages were not submissible in this case simply because it did not seek a motion for judgment on the pleadings for a claim of punitive damages that *did not exist*.

### Rock Port's Fiduciary Relationship Argument

 Alternatively, Rock Port contends that it had a cognizable tort claim for breach of good faith and fair dealing to support submission of punitive damages because it had a special relationship or status with Affiliated Foods as a member of the food cooperative.

At the instruction conference in the second trial, counsel for Affiliated Foods objected to Rock Port's instruction submitting punitive damages to the jury. The trial court overruled the objection and submitted the following instruction to the jury:

### INSTRUCTION NO. 9

If you find the issues in favor of plaintiff, and if you believe the conduct of defendant as submitted in Instruction Number 6 was outrageous because of defendant's evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find plaintiff entitled under Instruction

Number 8, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

You may consider harm to others in determining whether defendant's conduct was outrageous.

If you find that defendant is liable for punitive damages in this stage of the trial, you will be given further instructions for assessing the amount of punitive damages in the second stage of trial.

 Punitive damages must be pleaded and proved. *City of Greenwood v. Martin Marietta Materials, Inc.*, 299 S.W.3d 606, 627 (Mo. App. W.D. 2009). "To state a claim for punitive damages, the pleadings must allege facts indicating the defendant maliciously, willfully, intentionally, or recklessly injured the plaintiff by his tortious act." *Id.* (internal quotation omitted). Count II of Rock Port's petition was the only count that alleged conduct supportive of submission of a claim of punitive damages to the jury, and Count II was the only count to include a request for punitive damages in the prayer for relief. The jury's verdict in favor of Affiliated Foods on Count II in the 2014 trial was not the subject of the trial court's grant of a motion for new trial and has never been appealed. The trial court granted Rock Port's motion for new trial and conducted a new trial in 2015 *only* as to Count I, which did *not* allege an independent tort, did *not* allege conduct supportive of punitive damages, did *not* allege facts establishing that the relationship between Affiliated Foods and Rock Port was anything other than a *business* relationship, and did *not* request punitive damages in the prayer for relief. Hence, it is clear that punitive damages were not pleaded as to the only count that went to trial in the second trial. Aside from this pleading deficiency, there

was likewise no proof adduced to support the giving of a punitive damages instruction to the jury.

▮ "Missouri law implies a covenant of good faith and fair dealing in every contract." *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. App. W.D. 2000). "The implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of the expected benefits is an enforceable contract right." *Id.* "Breach of the implied duty of good faith and fair dealing is a contract action." *Id.* at 413. "A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement." *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. App. E.D. 2012). *See also Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo. App. W.D. 2002). The purpose of the cause of action is to "prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party." *Glenn*, 360 S.W.3d at 877. However, "[t]he covenant of good faith and fair dealing is not an overflowing cornucopia of wished-for legal duties." *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. App. W.D. 2009) (internal quotation omitted).

▮ Hence, the beginning point for any analysis of a claim for breach of the covenant of good faith and fair dealing is to recognize that it is a contract action, and the damages associated with a breach of contract arise from the terms of the contract. Punitive damages do *not* flow from breach of *contract*; they flow from a separate, independent *tort*. In fact, this court has distinguished the *tort* of bad faith from the *contract* action of breach of

the duty of good faith and fair dealing. *See Schell v. LifeMark Hosps. of Mo.*, 92 S.W.3d 222, 230 n.6 (Mo. App. W.D. 2002).

▮ In Missouri, as a general rule punitive damages are not recoverable in a contract case unless "the breaching party's conduct, apart from an intentional breach of the contract, amounts to a separate, independent tort." *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 23 (Mo. App. S.D. 2002) (internal quotation omitted). In Missouri, the separate and independent tort flows from establishing that the *business* relationship has morphed into a *fiduciary* relationship. *Freeman v. Leader Nat'l Ins. Co.*, 58 S.W.3d 590, 598 (Mo. App. E.D. 2001). "However, the existence of a business relationship does not give rise to a fiduciary relationship, nor [to] a presumption of such a relationship." *Kratky v. Musil*, 969 S.W.2d 371, 377 (Mo. App. W.D. 1998) (internal quotation omitted). And, "[t]he implied covenant of good faith and fair dealing 'does not transform a business relationship into a fiduciary relationship.'" *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (quoting *W.K.T. Distrib. Co. v. Sharp Elecs. Corp.*, 746 F.2d 1333, 1337 (8th Cir. 1984)). Instead, a fiduciary relationship extends only to instances where "a special confidence is reposed on one side and there is resulting *domination and influence* on the other." *Kratky*, 969 S.W.2d at 377 n.1 (internal quotation omitted).

▮ Hence, the context where both contract and tort are present is typically in the insurer-insured liability insurance contract setting where the terms of the contract often dictate that the insurer retains the absolute authority to evaluate and settle third-party claims against the insured. In this context, the insured is subservient to the dominance of the insurer to settle a

third-party claim against the insured. Accordingly:

> It is the existence of this fiduciary relationship between insurer and insured, aside from insurer's subsisting implied covenant of good faith and fair dealing under the insurance policy, that exposes an insurer to tort liability for failing to exercise good faith in evaluating and negotiating third-party claims against an insured.

*Freeman*, 58 S.W.3d at 598.

Here, Rock Port alleged in Count I that Affiliated Foods breached its contractual covenant of good faith and fair dealing by supporting the efforts of a competitor before the competitor became a member of the cooperative in a fashion that was opportunistic and evaded the spirit of the cooperative agreement with its member, Rock Port. The jury agreed, awarding compensatory damages of $370,000. Conversely, Rock Port did *not* adduce evidence that Rock Port was subservient to the dominance of Affiliated Foods in their food cooperative business relationship; Rock Port did *not* adduce evidence that the *business* relationship between Rock Port and Affiliated Foods was also a *fiduciary* relationship via the dominion and control that Affiliated Foods exerted over Rock Port; Rock Port did *not* even request punitive damages against Affiliated Foods in its pleading on the count for breach of the covenant of good faith and fair dealing and, instead, for the first time at trial sought punitive damages in the form of its submission of a punitive damages instruction to the trial court. Simply put, Rock Port did not allege or present any evidence at trial to support the submissibility of a punitive damages instruction to the jury; Affiliated Foods was justified in objecting to the punitive damages instruction; and the trial court erred in permitting the jury to award punitive damages.

Point I is granted and the award of punitive damages is reversed.

## Point II

In Affiliated Foods' second point, it again alleges error relating to the award of punitive damages. Given our analysis in Point I and the corresponding relief granted, we need not and do not address Affiliated Foods' Point II.

## Point III

In Affiliated Foods' third point, it asserts that the trial court erred in overruling its objections to the verdict directing instruction offered by Rock Port and in submitting what Affiliated Foods argues was a "roving commission." We disagree.

## Analysis

"A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts which suit its fancy or its perception of logic to impose liability." *Minze v. Mo. Dep't of Pub. Safety*, 437 S.W.3d 271, 277 (Mo. App. W.D. 2014) (internal quotation omitted). "A jury instruction is considered a 'roving commission' when it fails to advise the jury what acts or omissions of the party would constitute liability, when the instruction is too general, or where the instruction submits a question to the jury in a broad abstract way without any limitation to the facts and the law." *Edwards v. Gerstein*, 363 S.W.3d 155, 166 (Mo. App. W.D. 2012) (internal quotation omitted).

There is no approved MAI instruction concerning breach of the covenant of good faith and fair dealing. "When there is no applicable MAI instruction, a non-MAI instruction may be given if it conforms to the requirements of Rule

70.02 in that it is simple, brief, impartial and free from argument." *Id.* at 165 (internal quotation omitted). When giving a non-MAI instruction, "the court must adopt an instruction that follows the substantive law and can be readily understood by the jury." *Id.* (internal quotation omitted).

■ "In Missouri, all contracts have an implied covenant of good faith and fair dealing." *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 9 (Mo. App. W.D. 2013) (internal quotation omitted). "To establish a breach of the covenant of good faith and fair dealing, the plaintiff has the burden to establish that the defendant exercised a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the plaintiff] the expected benefit of the contract." *Id.* at 9-10 (internal quotation omitted). "The party claiming breach of the implied covenant of good faith must present substantial evidence that it has been violated." *Id.* at 10 (internal quotation omitted). "Examples of bad faith resulting in breaches of the covenant include willfully rendering imperfect performance, abusing power in the specification of terms, or wrongfully interfering with or failing to cooperate with the other party's performance." *Reliance Bank v. Paramont Props., LLC*, 425 S.W.3d 202, 207 (Mo. App. E.D. 2014).

■ In Rock Port's petition, it alleged that an implicit term of the food cooperative agreement between Affiliated Foods and Rock Port was that Affiliated Foods would not take any actions that would undermine Rock Port's business by supporting a competitor of Rock Port that was not even a member of the Affiliated Foods food cooperative. Rock Port asserted that Affiliated Foods breached its duty of good faith and fair dealing under the agreement by supporting the efforts of Rock Port's competitor, FC Food Country, by using

fees obtained from Rock Port and other cooperative members to directly assist an investor group that would become a competitor of an existing cooperative member in a market that Affiliated Foods believed could only support one grocery store. Affiliated Foods' employee, Richard York, whose salary was paid by fees from Rock Port and other members of the food cooperative: met with the investor group's banker and agreed to provide pro formas, which included financial projections based on weekly and annual sales, margins, expenses, insurance, store labor, laundry, and uniforms; forwarded to an Affiliated Foods engineer photographs of a plat for the new store project to determine what size building would fit on that location; obtained building quotes for the new store project; and attended a TIF Commission meeting at the request of the investor group and assisted the investor group in obtaining the TIF. In addition, the Affiliated Foods graphic design team provided proposed logo designs for the investor group. All of this assistance was provided at a time when FC Food Country had not even become a member of the Affiliated Foods food cooperative and was effectively paid for by the fees Affiliated Foods had received from members of the food cooperative, including Rock Port, to pay operating expenses of the food cooperative.

At the instruction conference, counsel for Affiliated Foods objected to Rock Port's tendered verdict directing instruction, in relevant part, on the basis that it constituted a "roving commission." The trial court overruled the objection and submitted the following verdict director to the jury:

INSTRUCTION NO. 6

On the claim of Plaintiff for ... breach of the duty of good faith and fair dealing against Defendant, your verdict must be for plaintiff if you believe:

*First,* Plaintiff and Defendant entered into an agreement whereby Plaintiff paid Defendant 1% of its weekly sales as a Member and Stockholder under Defendant's Restated 2005 Bylaws; and

*Second,* Defendant provided assistance to a group of persons that were not Members or Stockholders of Defendant by either:

(1) meeting with and/or providing information to a banker to assist the group in obtaining financing for a new store, or

(2) providing free engineering services to the group to assist in building a new store, or

(3) providing free graphic design services to the group to assist in building a new store logo, or

(4) attending a hearing at the request of the group to assist the group in obtaining Tax Increment Financing; and

*Third,* in providing any of the assistance described in Paragraph Second, Defendant used money Plaintiff paid as a Member and Stockholder in a manner that evades the spirit of the agreement and denied Plaintiff the expected benefits as a paying Member and Stockholder of Defendant; and

*Fourth,* such conduct directly caused or directly contributed to cause damage to plaintiff.

Affiliated Foods' acts allegedly constituting its breach of the duty of good faith and fair dealing it owed to Rock Port were specifically enumerated in Paragraph Second. The jury was then required to find in Paragraph Third that the specific acts benefitting a non-member enumerated in Paragraph Second were paid for with the money Affiliated Foods obtained from Rock Port and other members of the cooperative. Rock Port's verdict director did not assume disputed facts or submit an abstract legal question. The instruction specifically advised the jury what acts Affiliated Foods engaged in that evaded the spirit of its agreement with Rock Port and that denied Rock Port the expected benefit of its agreement with Affiliated Foods as a paying cooperative member. Affiliated Foods has not shown that Instruction No. 6 misdirected, misled, or confused the jury.

Point III is denied.

## Conclusion

The judgment of the trial court is affirmed as to Affiliated Foods' liability for compensatory damages but reversed as to Affiliated Foods' liability for punitive damages. Therefore, that portion of the judgment awarding punitive damages is vacated and, in all other respects, the judgment of the trial court is affirmed.

James Edward Welsh and Edward R. Ardini, Jr., Judges, concur.