

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

VICKY CHURCH, SARAH AUSTIN
AND JACOB CHURCH, ON BEHALF
OF ALL BENEFICIARIES,

        Respondents,

v.                WD85103

CNH INDUSTRIAL AMERICA, LLC,    Opinion filed:  May 16, 2023

        Appellant.

**APPEAL FROM THE CIRCUIT COURT OF HENRY COUNTY, MISSOURI**
**THE HONORABLE JAMES K. JOURNEY, JUDGE**

Division Three:  Janet Sutton, Presiding Judge, Cindy L. Martin, Judge
and Edward R. Ardini, Jr., Judge

CNH Industrial America, LLC ("CNH") appeals from the judgment of the Circuit

Court of Henry County awarding damages to Vicky Church, Sarah Jo Austin, Jacob

Church, Norman Church, and Irene Church (collectively, "Plaintiffs") in their wrongful

death suit against CNH alleging strict products liability and negligence following the death

of Wayne Church ("Church").  Church, a mechanic, was crushed while repairing a CNH-

manufactured skid steer. CNH argues the trial court erred in rejecting its proffered

comparative fault instruction, erred in permitting evidence of three other cab-closure

incidents involving CNH-manufactured products, erred in permitting Plaintiffs' expert to testify about liability and causation, and erred in its award of post-judgment interest. We affirm in part and reverse in part.

## Factual and Procedural Background

In March 2016, Church, an experienced mechanic, was hired to work on the hydraulics of a CNH Model 60XT skid steer owned by Cody Peery ("Peery"). While working on the skid steer, Church was crushed when the cab fell and trapped him beneath. No one was present at the time of the accident, but Church was able to call 911 from his cell phone. When emergency responders arrived, a single paramedic lifted the cab off of Church. After Church had been removed, the cab remained raised for a short time and then fell on its own. Church was transported to a hospital where he died from his injuries.

Plaintiffs filed a wrongful death action against CNH, alleging strict products liability (failure to warn and instruct; design defect) and negligence. Specifically, Plaintiffs claimed that the skid steer had a defective design, that CNH failed to warn users that the latch that held open the cab when undergoing maintenance (the hold-open latch) could easily break without the user's knowledge, and that a broken latch would permit the cab to abruptly close. A jury trial was held at which the following evidence was adduced:

In the early 2000s, CNH designed and manufactured skid steers with a new design for holding the cab open during maintenance. This design consisted of a cantilever and a hold-open latch, which allowed the user to pull the cab open until the hold-open latch engaged. The hold-open latch was not designed to support the weight of the cab; instead, when the cab was fully opened, gravity kept the cab from closing. The hold-open latch was

2

designed to engage before the cab could inadvertently close due to external forces such as wind or a mechanic bumping the cab.

The skid steer relevant to this case was outfitted with a hold-open latch which was broken at the time of the accident. According to CNH's expert, pushing on the grab handles, including for the purpose of confirming that the latch was engaged, could create enough force to break the latch. CNH acknowledged that a strong gust of wind could close the cab if the hold-open latch was not operational. Photographs of a properly functioning hold-open latch revealed no perceptive difference from a broken latch. Despite knowing of the fragility of the hold-open latch, CNH did not warn users of the associated danger.

According to Plaintiffs' expert, Russ Rasnic, Church fully opened the cab and began working on the skid steer's hydraulics. At some point, as a result of the hold-open latch being inoperative, either a strong wind or the cab being bumped caused the cab to close, trapping Church and ultimately leading to his death. Rasnic opined that the hold-open latch was defectively designed causing it to break under normal use, an inoperative hold-open latch was not readily apparent to a user, and CNH provided no warning that the latch could break rendering an opened cab unsecure and at risk of closing.

In contrast, CNH's experts opined that the cab on this particular skid steer was too heavy for a single person to lift because one of the struts that assists in lifting the cab was depleted of nitrogen, which would have made it more difficult to raise. CNH's experts believed that Church used three-foot pry bars, which were found on the ground near the skid steer following the accident, to help keep the cab open. One of the experts testified that Church's injuries were more consistent with a cab falling from a partially opened

3

position, which could have been achieved using the pry bars. Therefore, CNH argued that Church had misused the skid steer. CNH also asserted that Peery knew that the latch was broken and had informed Church that he had previously experienced difficulty opening the cab and had needed to tie the cab in an open position to perform maintenance on the skid steer. Thus, CNH asserted that Church should have known that the latch was broken and should have taken protective measures such as tying the cab open.

The jury returned a verdict in favor of Plaintiffs, awarding $3,000,000 in compensatory damages and $10,000,000 in punitive damages. On November 17, 2020, the trial court entered a judgment on the verdict and awarded Plaintiffs post-judgment interest. CNH appealed, which was dismissed by this Court because the trial court had failed to apportion the damages among the beneficiaries and thus the judgment was not yet final. On November 23, 2021, the trial court entered a judgment apportioning the compensatory and punitive damages and awarding post-judgment interest as of the date of the original November 2020 judgment. CNH appeals. Additional facts will be recited throughout this opinion.

**Discussion**

CNH raises four points on appeal. In its first point, CNH alleges that the trial court erred in refusing to submit a comparative fault instruction to the jury. In Point II, CNH claims that the trial court erred in allowing evidence of three other incidents involving hold-open latches to be presented to the jury. In its third point, CNH asserts that the trial court erred in permitting Rasnic, Plaintiffs' expert, to testify about liability and causation. Finally, in Point IV, CNH argues that the trial court erred in awarding post-judgment

4

interest from the earlier, non-final judgment instead of the judgment later entered after damages had been apportioned.

### *Point I – Instructional Error*

In Point I, CNH asserts that the trial court erred by refusing to submit a proffered comparative fault instruction, arguing that "sufficient evidence exists to support submission of the instruction in that both parties adduced evidence regarding Wayne Church's actions and whether his conduct caused or contributed to cause his death, including whether he failed to follow the manufacturer's instructions to fully open the cab and ensure the hold open latch is engaged before undertaking maintenance on the machine, failing to inspect the condition of the 60XT, or adhere to the warning and instructions provided by Peery, and instead used pry bars found at the scene to only partially open the cab."

### *Facts*

During the instructions conference, CNH offered the following comparative fault instruction:

> In your verdict, you must assess a percentage of fault to plaintiffs, if you believe:
>
> First:
> > Decedent failed to use the skid steer as reasonably anticipated by the manufacturer; or
> >
> > Decedent used the skid steer for a purpose not intended by the manufacturer; or
> >
> > Decedent used the skid steer with knowledge of a danger involved in such use with reasonable appreciation of the consequences and the voluntary and unreasonable exposure to said danger; or

5

Decedent's use constituted an unreasonable failure to appreciate the danger involved in use of the skid steer or the consequences thereof and the unreasonable exposure to said danger; or

Decedent failed to undertake the precautions a reasonably careful user of the product would take to protect himself against dangers which he would reasonably appreciate under the same or similar circumstances.

Second, decedent, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of decedent directly caused or directly contributed to cause the death of decedent.

The trial court refused to submit the proffered comparative fault instruction to the jury.

*Standard of Review*

"The trial court's refusal to give a party's proffered instruction is reviewed *de novo*, evaluating whether the instructions were supported by the evidence and the law." *Cluck v. Union Pac. R. Co.*, 367 S.W.3d 25, 32-34 (Mo. banc 2012) (citing *Marion v. Marcus*, 199 S.W.3d 887, 893 (Mo. App. W.D. 2006)). This standard of review is compelled by Rule 70.02(a),[1] which provides that jury instructions "shall be given or refused by the court according to the law and the evidence in the case." *Marion*, 199 S.W.3d at 892. "The imperative 'shall' in Rule 70.02(a) does not admit discretion on the part of the trial judge if the proffered instruction is supported by the evidence and the law and is in proper form." *Id.*

---

[1] Rule references are to the Missouri Supreme Court Rules (2018).

*Analysis*

CNH argues on appeal that it should have been permitted an instruction on comparative fault. However, in doing so, CNH sidesteps a critical fact – it proffered a faulty instruction.

"Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b). "Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." *Id.*

Section 537.765, RSMo,[2] authorizes the submission of a comparative fault instruction in products liability cases. *See Egelhoff v. Holt*, 875 S.W.2d 543, 547 (Mo. banc 1994). This section includes six types of comparative fault:

(1) The failure to use the product as reasonably anticipated by the manufacturer;

(2) Use of the product for a purpose not intended by the manufacturer;

(3) Use of the product with knowledge of a danger involved in such use with reasonable appreciation of the consequences and the voluntary and unreasonable exposure to said danger;

---

[2] Statutory references are to the Missouri Revised Statutes, updated through the 2021 supplement.

7

(4) Unreasonable failure to appreciate the danger involved in use of the product or the consequences thereof and the unreasonable exposure to said danger;

(5) The failure to undertake the precautions a reasonably careful user of the product would take to protect himself against dangers which he would reasonably appreciate under the same or similar circumstances; or

(6) The failure to mitigate damages.

§ 537.765.3(1)-(6), RSMo. Because there is no approved MAI instruction addressing the submission of comparative fault in products liability cases under section 537.765.3, RSMo, CNH modeled an instruction after MAI 32.01(3), which is the comparative fault instruction for use in wrongful death cases.

"'In circumstances where no approved instruction applies, Rule 70.02(b) allows for the use of not-in-MAI instructions.'" *Ford v. Ford Motor Co.*, 585 S.W.3d 317, 333 (Mo. App. W.D. 2019) (quoting *Barth v. St. Jude Med., Inc.*, 559 S.W.3d 923, 925 (Mo. App. E.D. 2018)). "In evaluating non-MAI instructions, this Court determines whether the instruction clearly communicates a correct characterization of applicable substantive law and is understandable." *Higgins v. Star Elec., Inc.*, 908 S.W.2d 897, 906 (Mo. App. W.D. 1995). "The criteria utilized to determine whether an instruction is correct is 'whether an average juror would correctly understand the applicable rule of law, and whether a jury was not or could not be confused or misled, resulting in prejudice to one of the parties.'" *Id.* (quoting *Stone v. Duffy Distrib., Inc.*, 785 S.W.2d 671, 678 (Mo. App. S.D. 1990)).

CNH's proffered instruction was patterned on the statute and listed nearly verbatim five of the six types of fault contained in the statute without reference to any facts related to Church's specific conduct. "As a general rule, where the law is embodied in a statute, it

is sufficient in instructions to the jury to follow the language of the statute." *Henderson v. St. Louis Hous. Auth.*, 605 S.W.2d 800, 803 (Mo. App. E.D. 1979). "There are, however, exceptions to the rule, especially where the terms of the statute are general and indefinite." *Id*. This is such a case, as "submit[ting] these defenses solely in their statutory form . . . likely would constitute a 'roving commission.'" *Egelhoff*, 875 S.W.2d at 548 ("It was necessary to specify the conduct by [the plaintiff] that was claimed to constitute the fault").

"'A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts [that] suit its fancy or its perception of logic to impose liability.'" *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 189 (Mo. App. W.D. 2017) (quoting *Minze v. Dep't of Pub. Safety*, 437 S.W.3d 271, 277 (Mo. App. W.D. 2014)). "'A jury instruction is considered a 'roving commission' when it fails to advise the jury what acts or omissions of the party would constitute liability, when the instruction is too general, or where the instruction submits a question to the jury in a broad abstract way without any limitation to the facts and the law.'" *Id*. (quoting *Edwards v. Gerstein*, 363 S.W.3d 155, 166 (Mo. App. W.D. 2012)). "'An instruction is considered prejudicial where it submits a legal question in an abstract way giving the jury a roving commission to return a verdict without being limited to any issues of fact or law developed in the case.'" *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 120 (Mo. App. W.D. 2006) (quoting *Citizens Bank of Appleton City v. Schapeler*, 869 S.W.2d 120, 129 (Mo. App. W.D. 1993)).

9

Here, CNH offered an instruction using the language from section 537.765.3, RSMo, without the addition of facts specifying the conduct constituting the alleged fault on Church's part. This complete failure to inform the jury as to the facts it must find to establish fault is "too general" and would "submit[ ] a question to the jury in a broad abstract way without any limitation to the facts[.]" *See Rock Port Market, Inc.*, 532 S.W.3d at 189. Therefore, the instruction proffered by CNH was not in proper form as it would have constituted a roving commission. Thus, the trial court did not err in refusing to submit the comparative fault instruction to the jury. *Marion*, 199 S.W.3d at 889 (holding that Rule 70.02(a) requires the submission of a proffered instruction but only if it "is supported by the evidence and the law and is in proper form"); *see also McNeill v. Kansas City*, 372 S.W.3d 906, 909-10 (Mo. App. W.D. 2012) ("To avoid a roving commission, the [trial] court must instruct the jurors regarding the specific conduct that renders [a party] liable"); M.A.I 37.00 [2022 Rev.], General Comment, at H ("subparagraphs of § 537.765 are necessarily general and do not specify an act of the plaintiff on which to base a finding of comparative negligence and may implicate judicial prohibitions against roving commissions").

CNH's point on appeal and the argument portion of its opening brief, are notably (and fatally) silent on the subject of whether its proffered comparative fault instruction was in proper form. Instead, in response to Plaintiffs' assertion on appeal that the trial court did not commit error in refusing to submit CNH's proffered instruction because the instruction was not in proper form, CNH complains that Plaintiffs did not raise this objection at trial, and thus unfairly deprived CNH of the opportunity to revise the instruction. CNH's

10

argument fundamentally misunderstands that CNH bore the burden to submit a proffered instruction in proper form.[3] *Marion*, 199 S.W.3d at 889. "[A]lthough a party is entitled to have its own instruction submitted to the jury *if it is correct*, this entitlement does not impose a duty on the trial court to draft a proper instruction when the parties fail to submit a correct instruction." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 852 n.5 (Mo. banc 2018) (quoting *Cluck*, 367 S.W.3d at 34) (emphasis added). CNH's burden is not controlled or altered by whether, or which, objections were registered in response to its proffered instruction, as a trial court cannot commit error when it refuses to submit a jury instruction that is not in proper form. *Cluck*, 367 S.W.3d at 34 (holding that "it is the duty of an attorney for a party to aid the court in giving proper instructions which support that

---

[3] We are not persuaded by CNH's citation to Rule 70.03 for the proposition that to rely on the improper form of CNH's proffered instruction to defend against a claim of trial court error on appeal, Plaintiffs were required to register the same objection at trial. Though Rule 70.03 does provide that "[c]ounsel shall make specific objections to instructions considered erroneous," it does so as a condition of preserving a claim of error on appeal, as the Rule continues to provide that "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection." Plaintiffs are not the appellants in this appeal, and are not claiming error in the giving or failure to give an instruction in this case. "Rules requiring that claims of error be preserved in the circuit court do not apply equally to appellants and respondents." *Brown v. Chipotle Servs., LLC*, 645 S.W.3d 518, 526 (Mo. App. W.D. 2022).

> [A]ppellate courts are primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result[.] . . . Where the circuit court does not specify the reasons for a decision, this Court will affirm if the holding is correct on any tenable basis. Our identification of arguments which will uphold the circuit court's judgment is not limited to issues raised by the respondent. Indeed, [a] respondent is not required to file a brief, . . . and he does not have the burden on appeal to establish the correctness of the judgment.

*Id.* at 526-27 (internal quotations and citations omitted).

party's claim," and that when a party "fails to render such aid, the trial judge should refuse to submit the case to the jury") (citations omitted).

Point I denied.

### *Point II – Admission of Evidence*

In its second point, CNH claims that the trial court abused its discretion in admitting evidence of three other incidents involving cab-closure injuries, arguing that "there was not sufficient similarity to support admission of the evidence for proof of defect or for notice of danger." CNH also asserts that it suffered prejudice because "all three [incidents] involved individuals using different model skid steer loaders, under dissimilar circumstances, and in the absence of expert testimony the other cab closures resulted from a broken cab hold open latch."

### *Facts*

Before Church's accident, CNH had received numerous reports of hold-open latch failures. At the time of trial, CNH had provided at least 284 replacement latches to customers. In 2006, CNH was informed of an accident involving Gary Smith ("Smith") where he was crushed when the cab of a skid steer with a similar hold-open latch fell on him. In 2011, CNH learned of an incident where Tom Stenzel ("Stenzel") was injured when the cab of a similar skid steer "fell on his left forearm crushing the bones." Plaintiffs additionally discovered a man in nearby Clinton, Missouri, named Daniel Henley ("Henley"), who had experienced a similar incident where the cab closed while he worked under it despite his belief that the hold-open latch was engaged.

12

At trial, Plaintiffs sought to admit and play to the jury the depositions of Henley and Stenzel. Plaintiffs also sought to admit information about Smith's accident through their expert witness, Rasnic.

First, Plaintiffs sought to admit Henley's videotaped deposition, in which he explained the nature of his accident with a similar skid steer where the hold-open latch was deformed and the cab came down on his arm, crushing it, before he was able to lift the cab to extricate himself. CNH affirmatively announced that it had no objection:

> [Plaintiff's counsel:] Your Honor, Plaintiffs are going to play the recorded videotape deposition of Daniel Henley.
>
> . . .
>
> THE COURT: Any objection?
>
> [CNH's counsel:] No objection, Your Honor. . . . And no objection to the reporter not reporting it.

Next, Rasnic testified about Smith's incident where the cab fell and crushed him, causing his death. CNH did not object to this testimony and only asserted a later objection to the admission of a report associated with Smith's accident. The trial court admitted the report, and Rasnic continued to testify about Smith's accident without objection.

Rasnic also testified about the accident report involving the Stenzel incident. When Plaintiffs' counsel sought to admit this report, CNH objected based on "[r]elevance as to time[.]" The trial court overruled the objection and admitted the report. CNH made no further objections to testimony about the Stenzel incident.

Later, Plaintiffs sought to admit and play Stenzel's video deposition which was granted without objection.

13

*Standard of Review*

"'We review the trial court's admission or exclusion of evidence under a deferential standard of review.'" *Thomas v. Harley-Davidson Motor Co. Grp., LLC*, 571 S.W.3d 126, 134 (Mo. App. W.D. 2019) (quoting *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 183-84 (Mo. App. W.D. 2012) (additional quotation and citation omitted)). On appeal, we consider whether the trial court abused its discretion in admitting or excluding the evidence, "not whether the evidence was admissible or should have been excluded." *Id.* "A court abuses its discretion only when the court's ruling is 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006)). "'If reasonable persons may differ as to the propriety of an action taken by the trial court, then there was no abuse of discretion.'" *Id.* (quoting *State v. Quick*, 334 S.W.3d 603, 609 (Mo. App. W.D. 2011)).

*Analysis*

"In products liability cases, 'evidence of other accidents may be relevant (1) to prove the existence of a particular physical condition or defect, (2) to show that the defect or dangerous situation caused the injury, (3) to show the risk that defendant's conduct created, and (4) to prove that defendant had notice of the danger.'" *Peters v. Gen. Motors Corp.*, 200 S.W.3d 1, 9 (Mo. App. W.D. 2006) (quoting *Govreau v. Nu-Way Concrete Forms, Inc.*, 73 S.W.3d 737, 741-42 (Mo. App. E.D. 2002)). "In products liability cases, evidence of an accident similar in nature to that which injured the plaintiff is admissible provided the evidence is relevant and sufficiently similar to the injury-causing accident so as to

14

outweigh concerns of undue prejudice and confusion of the issues." *Id*. at 9-10. "To be sufficiently similar, each occurrence must: (1) be of like character; (2) occur under substantially the same circumstances; and (3) result from the same cause as that alleged to have caused the accident in question." *Id*. at 10.

CNH asserts that the accidents involving Henley, Stenzel, and Smith were not sufficiently similar to the accident involving Church to be admissible. However, we need not reach the merits of these arguments because CNH failed to preserve its claims of error for appeal. "'To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be set out in the motion for new trial then carried forward in the appeal brief.'" *Thomas*, 571 S.W.3d at 135 (quoting *Harrell v. Cochran*, 233 S.W.3d 254, 259 (Mo. App. W.D. 2007)). "'Under Missouri law, objections must be made at the earliest possible opportunity, and a failure to object constitutes waiver of the claim on appeal.'" *State v. Jones*, 637 S.W.3d 526, 535 (Mo. App. W.D. 2021) (quoting *State v. Neighbors*, 502 S.W.3d 745, 748 (Mo. App. W.D. 2016)); *see also State v. Brotherton*, 797 S.W.2d 813, 815 (Mo. App. E.D. 1990) (finding that an objection was untimely and not preserved when "[t]he allegedly damaging evidence had already been presented to the jury without objection through identification of the exhibit and oral testimony concerning it"). In addition, "'[t]he failure to object at the trial on the same basis as that asserted on appeal fails to preserve that issue for appellate review.'" *Thomas*, 571 S.W.3d at 135 (quoting *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 699, 712 (Mo. App. S.D. 2008)). Finally, "[a]n announcement of 'no objection' when evidence is sought to be admitted waives appellate

15

review." *D.R. Sherry Const., Ltd. v. Am. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 906 (Mo. banc 2010).

Here, CNH could have either objected each time Plaintiffs brought forth evidence of the accidents, or it could have objected at the time Plaintiffs initially discussed each accident and requested a continuing objection. CNH did neither. In fact, CNH specifically stated that it had no objection to Henley's deposition being admitted and played for the jury. Thus, any argument as to the alleged erroneous admission of evidence concerning Henley's accident was waived. CNH also failed to preserve its claim of error relating to Stenzel's accident as it did not object to the admission of Stenzel's deposition, and its objection to Rasnic's testimony concerning that accident asserted a different basis than the one made on appeal. Indeed, at trial, CNH's objection was based on the timing of the prior accident; on appeal, CHN shifted to arguing that the nature of the accident was too dissimilar to Church's accident to be admissible. Further, as to the admission of Rasnic's testimony regarding Smith's accident, CNH objected only when Plaintiffs sought to admit the accident report, which was not the earliest opportunity as Rasnic had already testified about the facts of the accident. Thus, none of CNH's claims in this point are preserved. When a claim is not preserved for review, it "may only be reviewed for plain error which is rarely granted in civil cases." *Davis, Tr. of Restatement of Bill D. Davis & Judith E. Davis Joint Revocable Tr. Agreement dated Jan. 27, 1993 v. Smith*, 645 S.W.3d 575, 579 (Mo. App. W.D. 2022).

"'Under Rule 84.13(c), plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court

16

finds that manifest injustice or miscarriage of justice has resulted therefrom.'" *Id*. (quoting

*Holmes v. Kan. City Pub. Sch. Dist.*, 571 S.W.3d 602, 613 n.4 (Mo. App. W.D. 2018)).

"'We will reverse for plain error in a civil case only where the error is so egregious as to

weaken the very foundation of the process and seriously undermine confidence in the

outcome of the case.'" *Id*. (quoting *Holmes*, 571 S.W.3d at 613 n.4). "[P]lain error is not a

doctrine available to revive issues already abandoned by selection of trial strategy or

oversight." *King v. Unidynamics Corp.*, 943 S.W.2d 262, 266. CNH failed to properly

object to the admission of evidence of all three accidents and carry such objections forward

to its appeal. CNH also has not asked this Court to consider its argument for plain error

and thus has not provided us any reason to do so. Therefore, we decline to review the issues

for plain error.[4]

Point II denied.

### *Point III – Admission of Expert Testimony*

In its third point, CNH alleges that the trial court abused its discretion by permitting

Plaintiffs' expert witness, Russ Rasnic, to testify about liability and causation, arguing that

his opinions were based on unsupported and unreliable assumptions rendering them

inadmissible.

---

[4] On appeal, CNH asserts that it did properly object to the admission of evidence regarding these prior accidents. We disagree. The only objection consistent with its argument on appeal was made in its pretrial motions in *limine*, which preserves nothing for appeal. *See Gaal v. BJC Health Sys.*, 597 S.W.3d 277, 290 (Mo. App. E.D. 2019) ("The trial court's ruling on a motion in limine is a preliminary ruling on the admissibility of evidence and is subject to change throughout the course of trial[;]" thus, "to properly preserve for appeal the admission of evidence complained of in a motion in limine, the party challenging the evidence must also object at trial.").

*Facts*

Rasnic is a consulting engineer with more than twenty-five years of engineering experience. He investigated the incident involving Church and reviewed documentation concerning similar incidents. Rasnic inspected the skid steer at issue in this case but did not perform any tests on it. Rasnic also reviewed wind observations from a nearby airport on the day of the accident.

Rasnic explained that the hold-open latch could be broken or deformed by only seventy-one pounds of force and that the user would be unable to discern that the latch was inoperable. Rasnic opined that a different hold-open latch design would have prevented the incident. He stated that numerous designs existed that would readily confirm for the user when the latch was engaged and properly operating. Rasnic demonstrated how those designs would do so.

Based on Rasnic's investigation and consideration of the information provided by CNH's experts, Rasnic reached the following conclusions:

> No. 1, is that Case Skid Steer Loader was defective and unreasonably dangerous, which caused Wayne Church's death.
>
> No. 2, CNH failed to perform a proper premarket testing of a critical safety part, which was the cab hold-up latch.
>
> No. 3, CNH failed to warn of safety hazards with this product.
>
> No. 4, CNH did not properly monitor real world use of the product, nor take proper responsive action when learning of real world failures.

In support of his opinions, Rasnic noted that, although no one was present when Church's accident occurred, it would have been unlikely, based on Church's extensive

18

experience as a mechanic, that he would have attempted to work on the skid steer without fully opening the cab. Rasnic opined that Church may have used the pry bars found near the skid steer to assist him in lifting the cab but not to prop the cab open, which would have left little room to work. Finally, Rasnic stated that his review of the information provided indicated nothing inconsistent with his opinion that Church fully opened the cab and that the defect in the hold-open latch resulted in the cab closing and causing his death.

Prior to trial, CNH filed a motion to exclude Rasnic, arguing that his opinions were unreliable. The trial court denied CNH's motion. At trial, when Rasnic was called to testify, CNH asserted no objection. During Rasnic's testimony, Plaintiffs offered exhibit 157, which was a packet containing Rasnic's background and information about his opinions in the case. CNH specifically stated "no objection" to a majority of the exhibit, including Rasnic's opinions regarding defect and causation, and only objected to opinions about field monitoring and safety bulletins, which are not at issue on appeal. The trial court overruled the objection and admitted the exhibit.

*Standard of Review*

"This Court reviews a circuit court's decision to admit or exclude expert testimony for an abuse of discretion." *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 778 (Mo. banc 2015) (citing *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011)). "The circuit court 'enjoys considerable discretion in the admission or exclusion of evidence.'" *Shallow v. Follwell*, 554 S.W.3d 878, 881 (Mo. banc 2018) (quoting *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014)). "A circuit court abuses its discretion when its 'ruling is clearly against the logic of the circumstances then

19

before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id*. (quoting *Lozano*, 421 S.W.3d at 451).

*Analysis*

In order to testify in the form of an opinion, an expert must be qualified "by knowledge, skill, experience, training, or education[.]" § 490.065.2(1), RSMo. Section 490.065.2, requires that the expert's opinion meet the following criteria:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case[.]

§ 490.065.2(1)(a)-(d), RSMo. Missouri courts consider the factors set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993):

> (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied and the existence and maintenance of standards and controls; and (4) whether the technique or theory has been generally accepted in the scientific community.

*State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 319 (Mo. App. E.D. 2018) (citing *Daubert*, 509 U.S. at 593-94). There is no single factor that is dispositive in this consideration; and ultimately, expert testimony is reliable if it is "based on sufficient facts or data, reliable principles and methods and reliable application thereof." *Id*. at 318-19.

20

"Generally, the sources and bases of an expert's opinion affect the weight of the opinion, not its admissibility." *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 544 S.W.3d 214, 230 (Mo. App. E.D. 2017). "The weight of the opinion is a question for the jury, and therefore the opinion should reach the jury 'unless the expert's information is so slight as to render the opinion fundamentally unsupported.'" *Id.* (quoting *Whitnell v. State*, 129 S.W.3d 409, 414 (Mo. App. E.D. 2004)).

CNH argues that "Rasnic's opinions were not supported by the type of scientific work and analysis required by § 490.065[,]" and, "[e]ach of his opinions were based on nothing more than his subjective belief and unsupported conjecture." Despite this argument on appeal, like in Point II, CNH failed to properly preserve its objection to Rasnic's expert opinion. Indeed, CNH did not object when Rasnic was called to testify, and it affirmatively stated that it had no objection to Rasnic's opinions that are challenged in this appeal. Because CNH failed to properly preserve its claims as to this point, we can review it only for plain error. *See Davis*, 645 S.W.3d at 579. Moreover, "affirmatively announcing 'no objection' waives even plain error review." *Martens v. White*, 195 S.W.3d 548, 559 (Mo. App. S.D. 2006). Because CNH failed to object and affirmatively announced that it had no objection to a Rasnic's testimony relevant to the issues raised in this appeal, CNH has waived its argument about the admissibility of Rasnic's expert opinions.[5]

Point III denied.

---

[5] CNH again asserts that this point is preserved, relying on its motion in *limine*. Like we explained in Point II, objections made in motions in *limine* are interlocutory and do not preserve anything for review. *See supra* n.3; *Gaal*, 597 S.W.3d at 290.

### *Point IV – Post-Judgment Interest*

In Point IV, CNH claims that the trial court misapplied the law by awarding post-judgment interest from the date of its initial judgment, which failed to apportion damages, instead of from its later judgment in which damages were apportioned, which was entered more than a year after the initial judgment.

### *Facts*

The jury's verdict awarding compensatory and punitive damages was entered on November 13, 2020. On November 17, 2020, the trial court entered what purported to be a final judgment, including an award of post-judgment interest of 5.25%. CNH attempted to appeal from that judgment, but that appeal was dismissed, as this Court found that the trial court's failure to apportion the damages between the beneficiaries as required by section 537.095.3, RSMo, rendered the judgment not yet final. On November 23, 2021, more than a year after the initial judgment, the trial court entered a judgment apportioning the damages. In that judgment, the trial court again awarded post-judgment interest at 5.25%, which included $693,651.28 in interest that had accrued between the November 17, 2020 judgment and the one entered on November 23, 2021.

### *Standard of Review*

"Determining the date from which post-judgment interest is due is a question of law that we review *de novo*." *Lake v. McCollum*, 324 S.W.3d 481, 484 (Mo. app. W.D. 2010). "Accordingly, we review the trial court's judgment independently, without deference to the trial court's conclusions." *Johnson v. BFI Waste Sys. of N. Am., Inc.*, 162 S.W.3d 127, 129 (Mo. App. E.D. 2005)).

"Post-judgment interest is governed by section 408.040." *Lake*, 324 S.W.3d at 484. The purpose of that statute "'is to compensate a judgment creditor for the judgment debtor's delay in satisfying the judgment pending the judgment debtor's appeal.'" *Johnson*, 162 S.W.3d at 129 (quoting *Moore v. Bi-State Dev. Agency*, 132 S.W.3d 241, 243 (Mo. banc 2004)). "More specifically, 'post-judgment interest is awarded on the theory that it is a penalty for delayed payment of the judgment.'" *Id*. (quoting *Green Acres Enters, Inc. v. Freeman*, 876 S.W.2d 636, 641 (Mo. App. W.D. 1994)).

"Under [section 408.040, RSMo,] post-judgment interest runs from the date the circuit court entered judgment and not from the date the jury entered its verdict." *Lake*, 324 S.W.3d at 484. "The statute's focus is clearly upon identifying the judgment which creates a debt or right to collection." *Johnson*, 162 S.W.3d at 129. "As the Supreme Court has held, 'due,' in the context of Section 408.040.1, means 'time for payment.'" *Id*. (quoting *Kennard v. Wiggins*, 183 S.W.2d 870, 872 (Mo. 1944)). "Where, 'under said judgment there could be no process for collection of money,' such judgment does not trigger the running of post-judgment interest." *Id*. (quoting *Kennard*, 183 S.W.2d at 872).

Here, there were two judgments entered by the trial court—one in November 2020 and one in November 2021. To determine from which judgment post-judgment interest began to accrue, we first consider section 537.095.3, RSMo. *See Johnson*, 162 S.W.3d at 130. That statute specifies:

> In any action for damages [in a wrongful death suit], the trier of the facts shall state the total damages found[.] The court shall then enter a judgment

as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court.

§ 537.095.3, RSMo. Thus, "[i]n a wrongful death case, prior to the entry of a judgment apportioning damages pursuant to Section 537.095, 'there can be no final judgment.'" *Johnson*, 162 S.W.3d at 130 (quoting *Woods v. Cory*, 149 S.W.3d 912, 914 (Mo. App. S.D. 2004)). Therefore, the relevant judgment for purposes of post-judgment interest in a wrongful death action is the one that apportions damages. *See id.* at 130-31 (holding that the judgment in the case "stat[ing] the total damages and apportion[ing] them among those persons entitled thereto, . . . [was] the final and appealable judgment" from which date post-judgment interest should run).

Here, the November 2020 judgment did not apportion damages and thus did not finally determine the rights of the parties in the action. Those rights were only determined in the November 2021 judgment. Therefore, for purposes of post-judgment interest, the judgment entered November 23, 2021, is the relevant judgment, and the trial court erred by awarding post-judgment interest for the time between the November 17, 2020 judgment and the judgment entered on November 23, 2021.

Point IV granted.

## Conclusion

The judgment of the trial court is affirmed in part and reversed in part, and the judgment is modified to remove the award of $693,651.28 in post-judgment interest that accrued before the November 23, 2021, judgment apportioning damages was entered. *See Johnson v. Heitland*, 314 S.W.3d 777, 779 (Mo. App. E.D. 2010) (quoting Rule 84.14)

24

("The appellate court shall . . . give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case.").

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

25